Jasen, J.
Defendants appeal from orders of the Erie County Court affirming judgments of conviction under the Sunday sales law. (General Business Law, § 9.) The principal issue, as we would frame it, is whether, with a history of disuse and absent a policy of general enforcement, prosecution at the instance of an interest group for its private purposes constitutes discrimination violative of the equal protection clauses of the Federal and State Constitutions. We think so and, accordingly, would reverse on that ground alone.
The defendants are food supermarkets located in Erie County. The complainant in each case is the business representative of the Amalgamated Meatcutters Union, Local 34, whose territory includes Erie County and western New York. Pursuant to a prearranged plan devised by some of the officers and business agents of the local, purchases of proscribed items were made at the defendant supermarkets on two Sundays in January and February, 1972, most of which, but not all, are under collective bargaining agreements with Local 34. Members and officials making the purchases were reimbursed with union funds. So-called "Mom and Pop” grocery stores were by design omitted from the enforcement campaign. With the advice and assistance of the local’s law firm, informations were thereafter filed and prosecution commenced in the City Court of Buffalo.
*329 Alleging discriminatory enforcement, a pretrial hearing (People v Utica Daw’s Drug Co., 16 AD2d 12 [Halpern, J.]) was conducted on six days in June and September of 1972. An extensive record was made establishing beyond peradventure massive and flagrant violations of the Sunday sales law in Erie County, known and acquiesced in by State and local law agencies who had no policy of general enforcement. The District Attorney of Erie County testified that over a seven-year period it was his policy not to prosecute actively Sunday sales law violations, but that if an arrest were made — i.e., if an information was filed — prosecution would be brought. In point of fact, the last prosecutions initiated by his office were in 1964 and 1965. It was the District Attorney’s view that active and general enforcement would deluge the already overburdened courts and he stated at the time of the arrests herein, he had no general enforcement plan for Sunday sales law violations. A retired deputy superintendent of the State Police testified that during his tenure as a field commander in the Buffalo area, it was the policy that the State Police acted only upon Sunday sales complaints and informations filed by private citizens. The Deputy Police Commissioner for the City of Buffalo testified that general and consistent enforcement was impossible and that the police would not initiate enforcement but would act only on citizens’ complaints.[1] In 35 years of police service in the City of Buffalo, he could not recall a single Sunday sales prosecution initiated upon complaint of a police officer.
Perhaps the most telling testimony was that of the officials of Local 34 who initiated the complaints. Their cumulative testimony was that enforcement was sought in response to member complaints about work on Sundays and because of the "problem” for the union posed by Sunday sales — a cut in total work hours for senior members caused by additional hiring of part-timers performing Sunday work.
The City Court, with an opinion, denied motions to dismiss on the ground of discriminatory enforcement and rejected also defendants’ constitutional challenge to the face of the statute on establishment of religion and equal protection grounds. The County Court affirmed, with a memorandum.
*330 Discriminatory enforcement as a defense to a criminal action derives from the Federal and State constitutional guarantee of equal protection of the law. (US Const, 14th Amdt; NY Const, art I, § 11; Penal Law — Discriminatory Enforcement, Ann., 4 ALR3d 404; Comment, 61 Col L Rev 1103.) The underlying concept is elemental — that persons similarly situated should be treated the same and that criminal justice should and must be evenly and equally dispensed. The cases in this State in the context of criminal law enforcement clearly stand for that principle. (E.g., People v Goodman, 31 NY2d 262, 268; People v Walker, 14 NY2d 901, 902; People v Friedman, 302 NY 75, 80-81; People v Utica Daw’s Drug Co., supra, pp 17-18.) However, in the Federal courts there are few cases in point. (Cf. Dixon v District of Columbia, 394 F2d 966, 968; Lenske v United States, 383 F2d 20, 27 [additional separate opn of Madden, J.]; United States v Robinson, 311 F Supp 1063, 1065-1066; United States v Elliott, 266 F Supp 318, 324-325.) And while the Supreme Court has not specifically addressed the issue, the principle is nevertheless implied or assumed in a number of decisions of that court. (See Cameron v Johnson, 390 US 611; Oyler v Boles, 368 US 448, 454-456; Two Guys v McGinley, 366 US 582, 588-589; cf. Edelman v California, 344 US 357, 359; Ah Sin v Wittman, 198 US 500, 506-507; Yick Wo v Hopkins, 118 US 356.)
Of course, it is State action that is proscribed by the equal protection clauses and here the prosecution was at the instance of a private party — the meatcutters. But when, in the exercise of prosecutional discretion, prosecution was pursued through the courts by the District Attorney against the backdrop, the history and the policy of nonenforcement, the power and the prestige of his office was lent to the meatcutters’ campaign and we think their actions became those of the State for purposes of bringing the equal protection guarantee into play. For as the Supreme Court declared less than 20 years after the adoption of the Fourteenth Amendment, "[t]he constitutional provision * * * must mean that no agency of the State, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws.” (Ex parte Virginia, 100 US 339, 347 [emphasis added].)
It is said that mere unequal application of a statute fair on its face does not of itself violate equal protection and that only purposeful or intentional discrimination is prohibited. (Snow- *331 den v Hughes, 321 US 1, 8; People v Goodman, 31 NY2d 262, supra.) And equally true is it that the burden of proving discriminatory enforcement is upon the complainant and that burden is not lightly met. (People v Goodman, supra, p 268; People v Utica Daw’s Drug Co., 16 AD2d 12, 19, supra.)
Assuming the fairness of the statute on its face and ascribing the actions of the meatcutters to the District Attorney, discriminatory enforcement is established in these cases as a matter of law. As found by the courts below, the Sunday sales law has fallen into a sort of desuetude by law agencies in Erie County, unenforced, save upon complaint. And then it is perhaps unenforceable in an even-handed and fair manner. Indeed, it is not an exaggeration to say that enforcement has been totally surrendered to private parties and interest groups who without constraint may manipulate the law for purely private purposes. This is an unseemly state of affairs openly inviting discrimination and harassment of one group by another. Here, the food supermarkets were singled out for prosecution among all food markets. “Mom and Pop” stores were, by design, excluded. And there is the added element of misuse of the law to alleviate a “problem” for the union dealing with a reduction in work hours for senior members precipitated by Sunday sales violations and additional hiring by the food supermarkets.
There is no doubt that, as is pointed out by the dissent, we have held otherwise. (People v L. A. Witherill, Inc., 29 NY2d 446; People v Friedman, 302 NY 75, supra.) But long before the instant cases came to us, there was dissatisfaction with the uneven enforcement aspect of this statute. (E.g., People v Weston’s Shoppers City, 30 NY2d 572.) However, none of the prior cases in this court presented a record adequate to adjudication of the equal protection claim. In marked contrast, the instant record meticuously details and squarely presents the issue.
Other points for reversal are urged, including that section 9 unconstitutionally establishes religion. But the court is unanimously of the view that there is no church-State problem in these cases. (Cf. People v Witherill, supra, p 449.)
There is another point, cogently urged and adopted by Judge Wachtler in his ppinion, that section 9 denies equal protection because the classifications drawn are “wholly irrational”. However, on the view taken, we find it unnecessary to reach that issue. But that is not to imply that the statute is free of doubt. While the equal protection guarantee does not *332 require absolute symmetry in classification, distinctions must reasonably relate to the legislative object sought to be attained. And there is a point at which proliferating exceptions to the general proscription of Sunday public selling reasonably may not be squared with the statutory purpose. Put another way, a point is reached where the exceptions swallow up the rule and render the total statutory scheme arbitrary. But reasonable exceptions to the general ban are, of course, permissible for it would be a horror absolutely to bar Sunday selling. The day of rest rationale remains historically and constitutionally valid and all that is required is that the classifications drawn reasonably promote the underlying statutory purposes.[2] But this record does not compel resolution of that issue and we would prefer to leave it for another day.
Accordingly, the orders of the County Court should be reversed and the informations dismissed.

. Perhaps the most glaring example of nonenforcement involved Buffalo’s annual Allentown open-air art festival, sanctioned by the Common Council and patrolled by as many as 70 police officers. We do note that sales of items of art and antiques recently have been exempted from Sunday sales ban (L 1973, ch 995).

. For an attempt at a statute for a common day of rest with exemptions for goods and services deemed reasonably necessary to enhance the purposes of the day or to promote the public health and safety see 3 Harv J on Legislation 345.