Robert W. Gout ant, J.
Each of the defendants was charged with a violation of section 7.8 of the Housing, Property Maintenance and Rehabilitation Code of the City of Binghamton (hereinafter referred to as the "Code”), for having allegedly "refused and failed to register dwelling units” owned by each of them. Defendants moved to dismiss the charges on the grounds of discriminatory enforcement, and a hearing was conducted by the court. Thereafter, counsel submitted memoranda in support of their respective positions.
At the outset, certain procedural questions were raised which merit brief mention. It is now clearly settled that where the defense of discriminatory enforcement is properly raised, the trial court must determine the issue thus presented as a matter of law and prior to the trial of the case. (People v Utica Daw’s Drug Co., 16 AD2d 12; People v Acme Markets, 37 NY2d 326.) It is also well established that the burden of proving such a defense rests upon the defendant. However, here the defendants argued that since the Utica Daw’s decision drew an analogy between the procedural steps to resolve such an issue and those to resolve a motion to suppress, the decision mandates that the same procedural requirements apply, thus placing upon the prosecution the burden of initially going forward, even though the defendant has the burden of proof. This court does not accept such an interpretation. While it is true the above analogy was drawn in the Utica Daw’s case, it was the limited purpose of providing an example of the court resolving a question of law, upon the taking of testimony where necessary, outside the presence of *665 the trial jury, rather than submitting that question to the jury as one of fact. That was the extent of the comparison. The motion here presented is to dismiss or quash the information, and on all such motions the burden of going forward, as well as of proof, properly rests upon the movant. Procedural steps are not altered because the defendant alleges discriminatory enforcement.
Section 7.8 of the Code reads, in pertinent part, as follows: "No owner shall occupy or let to any other occupant any vacant dwelling unit unless it complies with the provisions of this ordinance and provided that said owner (of a nonowner occupied dwelling unit) has registered at least every two (2) years (or more frequently where the Senior Code Enforcement Officer and conditions require it) his rental units and received for those units a certificate of registration. Upon each rental or re-rental of a dwelling unit, the owner shall obtain from the Senior Code Enforcement Officer a certificate of compliance or similar rental permit.”
The original Code was enacted in 1957, and has been amended from time to time since then. Jack A. Valada, the Director of the Code Enforcement Bureau and complainant in both informations, was called by the defendants to testify. He admitted that during his association with code enforcement in the city (some 25 years), he knew of no one who had been criminally prosecuted for failure to register rental properties, that action toward individual property owners had frequently been initiated in response to complaints from private citizens, and that the Code Enforcement Bureau had never had a comprehensive system enabling them to maintain current lists of rental properties indicating which were registered and which were not.
The defendants called nine witnesses, each of whom established that they had owned rental units for a number of years, had never registered them and had never been prosecuted for their failure to do so. Defendants also introduced into evidence the computer-prepared real property tax bills that had been issued to each of those property owners, which contained an abbreviated description indicating that all or part of the premises was used as a rental unit (e.g., "6F Apt and G” and "3FH & G”). Defendants contend such evidence establishes that code enforcement officials have or could acquire access to lists of rental units through proper use of data processing equipment, thereby enabling them to systematically check on *666 unregistered units and prosecute generally those failing to register, and their failure to do so precludes them from prosecuting on a piecemeal basis.
The arguments advanced by defendants can be categorized as follows: (1) The statute has been in general disuse for many years and any prosecution thereunder for failure to register is ipso facto discriminatory; (2) there have been widespread and flagrant violations of the registration requirement which were known or should have been known to code enforcement officials and which were not prosecuted, and therefore this prosecution is discriminatory; (3) prosecution of defendants was politically motivated, and thus improper and constitutionally impermissible. Those contentions will be treated sequentially.
The City of Binghamton has maintained for many years a Code Enforcement Bureau, charged with the primary responsibility to enforce the Code. It currently maintains a staff of investigators, clerical help and counsel, who are involved on a daily basis in the inspection of rental units to determine compliance and the investigation of complaints received from aggrieved citizens. Prosecution of responsible parties who have failed to bring premises into compliance is not a rarity in this court. The Code is not ignored. However, there remains the question of whether section 7.8 has been generally disregarded, even though the balance of the Code may have been enforced. That section has two aspects, one dealing with inspection and the issuance of a certificate of compliance before each new tenancy, and the registration of rental units. The evidence was clear that the inspection provisions have been and continue to be observed and enforced. One of the defendants’ witnesses, James Phelps, is the treasurer of a corporation owning and renting 199 rental units within the City of Binghamton. He testified that his corporation assiduously follows the inspection requirements of section 7.8 in that they standardly request an inspection of each unit and obtain a certificate of compliance prior to re-renting. Defendants urge that while recertification is always obtained, most of the units are not registered. The distinction between "registration” and inspection and issuance of a certificate of compliance for rental units is a technical one and, to a large extent, artificial. The testimony of George Tita, a Code enforcement officer, indicated that whenever a rental unit was inspected, the unit was automatically registered, even though the owner might be unaware of the "registration” per se. Such a system is sensible *667 and logical. The court finds from the evidence presented that the Code, including section 7.8, has not been generally disregarded, but has been enforced generally within the city, and further finds that rental units have been registered in conjunction with the inspection thereof.
The thrust of defendants’ second contention is that the efforts of the Code Enforcement Bureau to comprehensively enforce the provisions of the Code have been inadequate. It is conceded by the prosecution that the bureau does not methodically screen all tax listings to ascertain each unit subject to the registration and inspection requirement, ascertain which are in compliance, and pursue those not yet registered. There was evidence that during this year, efforts have been made to ferret out yet unregistered units. There was included with each water bill a notice of the requirements of section 7.8. In addition, they have begun to implement a more comprehensive system utilizing data processing equipment. In the past, there can be no doubt that many properties had not been registered or inspected. However, I find no credible evidence to support the contention that code enforcement personnel had knowledge of specific premises in violation and took no action. The court holds that the law does not require a fail-safe system of ascertaining all properties in violation as a condition precedent to the prosecution of any property owners. As the court stated in the Utica Daw’s case (16 AD2d 12, 15, supra) "the trier of the facts must be satisfied that there was intentional discrimination, and not mere laxity in enforcement”. This court finds from the evidence presented that code enforcement personnel performed within a limited system, and that within that system enforcement may have been selective, but it was not discriminatory. Such a distinction was recognized in the Utica Daw’s case, in which it was stated (p 21) that "even if the enforcement of a particular law is selective, it does not necessarily follow that it is unconstitutionally discriminatory. Selective enforcement may be justified when the meaning or constitutionality of the law is in doubt and a test case is needed * * * selective enforcement may also be justified when a striking example or a few examples are brought in order to deter other violators, as part of a bona fide rational pattern of general enforcement, in the expectation that general compliance will follow and that further prosecutions will be unnecessary. It is only when the selective enforcement is designed to discriminate against the persons *668 prosecuted, without any intention to follow it up by general enforcement against others, that a constitutional violation may be found”.
Defendants’ final contention appears to be the nucleus of their position. They claim that defendant Marion Nelson has been singled out for discriminatory treatment for undefined political reasons because of his position as a Councilman of this city, which was then expanded to include his wife, Theresa. At the outset it should be stated that the only testimony dealing with political considerations was limited to asking Mr. Valada whether the prosecution was caused by or related to that defendant’s office. Mr. Valada flatly stated that there was no connection. There is no shred of evidence to suggest otherwise. In People v Acme Markets (37 NY2d 326, 330, supra), the Court of Appeals held that the "underlying concept is elemental — that persons similarly situated should be treated the same and that criminal justice should and must be evenly and equally dispensed.” The question thus becomes, "Were Councilman Nelson and his wife treated the same as all others similarly situated?”
The evidence was clear that code enforcement had in the past come upon property owners who had not complied with section 7.8. In those cases, such owners had been requested to have the units registered, and they had complied. Here, the alleged noncompliance of defendants came to the attention of Code enforcement, and they too were requested to comply, but failed or refused to do so. I find from the evidence that it was not the failure to register alone that prompted the prosecution, but the failure to comply with a formal written request which allowed a sufficient and reasonable time for compliance.
Counsel seems to further suggest that because the request for compliance was generated by a newspaper article concerning the councilman’s reputed comment at a council meeting that he would never allow an inspection of his property, the considerations are different. I cannot agree. It would appear obvious that one cannot beat his breast in the public forum, proclaiming that he has chosen to disregard the law, and then claim discrimination because he finds official action focused upon him. The clear fact remains that the defendants were treated as all those before them. It was found that their properties, which should have been registered, were not. They were formally requested to register them. They failed to do so. They were the first to so fail, and they were the first to be *669 prosecuted. The prosecution was not instituted by a private interest group, but by public officials in the regular course of their duties. I find no evidence of purposeful or intentional discrimination.
Defendants’ motion to dismiss is denied.