VORNADO, INC., A CORPORATION OF THE STATE OF DELAWARE, T/A TWO GUYS; GERALD VITIELLO; JOSEPH HOPMAYER; STUART LEVINE; LOUIS MERCADO; THOMAS G. STRAMARA; AND ALAN LEDDEN, PLAINTIFFS, v. WILLIAM F. HYLAND, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; CITY OF HACKENSACK; BOROUGH OF LODI; CITY OF GARFIELD; TOWNSHIP OF NORTH BERGEN; TOWN OF KEARNY; AND CITY OF VINELAND, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided March 10, 1977.

344

*Mr. Frank J. Cuccio* for plaintiffs (*Messrs. Jones, Cuccio & Klinger,* attorneys).

*Mr. Paul Graham* and *Ms. Ermine L. Conley* for defendant *William F. Hyland,* Attorney General of the State of New Jersey.

*Mr. Seymour Chase* for defendant City of Hackensack.

*Mr. Edward R. Evans* for defendant Borough of Lodi.

*Mr. Anthony J. Sciuto* for defendant City of Garfield.

*Mr. Robert C. Auriemma* for defendant Township of North Bergen.

*Mr. Norman A. Doyle, Jr.* for defendant Town of Kearny.

*Mr. James R. Gruccio* for defendant City of Vineland.

*Mr. Edward G. Rosenblum* for intervening defendant Mens Wear Retailers of New Jersey, Inc. (*Messrs. Rosenblum & Rosenblum,* attorneys).

PRESSLER, J. S. C. Plaintiff Vornado, Inc., trading as Two Guys, the corporate successor of Two Guys from Harrison, Inc., brought this suit renewing its earlier challenge to the constitutionality of the Sunday Closing Law, *N. J. S. A.* 2A:171-5.8 *et seq.* (*L.* 1959, c. 119).

The genesis of the present action is the 1960 decision of the New Jersey Supreme Court in *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199 (1960) (*Two Guys*), in which the court not only held that the then newly enacted Sunday Closing Law was facially constitutional, but also that it impliedly repealed prior Sunday-proscription legislation, thus constituting the sole general legislation addressed to prohibition of Sunday activities. Out of the whole panoply of possible commercial activity, that statutory prohibition proscribes only retail selling, and out of the whole panoply of possible commodities merchandised by retail selling, the statutory prohibition proscribes the sale of only five categories of items, to wit, clothing and apparel, building and lumber supply materials, furniture, home and office furnishings, and appliances for household, business or office use. The prohibition, moreover, applies only in those counties opting therefor by referendum, at latest count ten.[1] Thus 11 counties are virtually unrestricted in respect of the nature and breadth of the commercial activity which may be lawfully engaged in on Sunday, and the other ten are equally unrestricted except that goods within the five proscribed categories cannot be sold.

---

[1] At the time *Two Guys* was decided, 12 counties had opted for Sunday closing, namely, Bergen, Passaic, Morris, Essex, Union, Hudson, Middlesex, Monmouth, Mercer, Gloucester, Cumberland and Somerset. Since then, both Gloucester and Mercer Counties have reopted to reject closing.

Despite its conclusion of facial validity, however, the court in *Two Guys* recognized the technical viability of plaintiff's constitutional attack based on the alleged arbitrariness and unreasonableness of the classification of proscribed goods. It thus held that plaintiff could not be denied an opportunity to try to sustain its heavy burden of proof of the arbitrariness of that classification in terms of what the court had concluded the constitutionally unobjectionable secular purpose of the law to have been. Accordingly, the court's disposition of the controversy then before it was to affirm the trial judge's denial of plaintiff's motion for summary judgment seeking adjudication of the facial unconstitutionality of the Sunday Closing Law, but to reverse the judge's grant of defendant's motion for judgment on the pleadings seeking to have the constitutional attack dismissed out of hand as being wholly without merit. A remand was therefore ordered so that plaintiff might adduce at a plenary hearing factual proofs compellingly demonstrating the arbitrariness of the five-category classification. Despite the opportunity so afforded, plaintiff did not then proceed. Now, 16 years later, it has again challenged the Sunday Closing Law by the filing of a new complaint. Although the present challenge is based on other constitutional grounds as well, the trial herein constituted, at least in part, the remand ordered over a decade and half ago.

The factual and legal framework within which the trial was conducted requires some further explanation. Plaintiff owns and operates in this State 27 multi-line discount department stores engaged in the retail sale of a vast variety of goods. Nineteen of these stores are located in counties which have adopted the Sunday Closing Law (closed counties). The eight stores located in the other counties (open counties) are fully open for business seven days a week. The stores in the closed counties, with the exception of the Newark store, are also open on Sunday, selling, however, only those goods which are not within one of the proscribed categories. Departments in the stores which handle proscribed

categories are physically roped off. Other retailers and, more particularly, multi-line discount operations similar to those of plaintiff's, responded to the Sunday Closing Law in essentially the same manner.

Prior to the peak of the Christmas shopping season of 1975 plaintiff determined that despite its 15 years of voluntary compliance with the Sunday Closing Law, the time was now ripe for its judicial reconsideration. Also anxious to test the manner in which the law would be enforced when flagrantly violated, plaintiff's plan of attack was to violate the law first and litigate later. Accordingly, it directed its stores in the closed counties to open all departments on Sunday, December 21. That action resulted in prosecutions by six municipalities: Hackensack, Lodi and Garfield in Bergen County, Kearny and North Bergen in Hudson County, and Vineland in Cumberland County. The following Sunday, December 28, 1975, and thereafter until December 1976, the stores in the closed counties reverted to their customary partially-open pattern.

This complaint was filed in January 1976. The relief sought was the enjoining of the six pending municipal prosecutions on the ground of the Sunday Closing Law's alleged unconstitutionality. The managers of the stores who were named as defendants in the municipal prosecutions joined as nominal parties plaintiff. The six municipalities which had initiated the prosecutions were joined with the Attorney General as parties defendant. Menswear Retailers of New Jersey, Inc., a voluntary association of specialty retailers interested in maintaining Sunday closing, was permitted to intervene as a party defendant. The municipal prosecutions were temporarily restrained from proceeding pending the conclusion of the litigation.

In this posture a pretrial was conducted from which essentially two constitutional issues emerged. The first was framed in terms of the question left open by *Two Guys*, namely, whether, as a matter of fact, the statutory classification of proscribed goods is reasonably related to the secular policies

sought to be advanced by Sunday closing. The second issue was whether the statute is unconstitutional because it is not susceptible to even-handed, fair or consistent enforcement. A third legal issue, conceded by all parties not to reach sufficient constitutional dimension to be able to result in invalidation of the statute but only to effect the viability of the pending municipal prosecutions, was also raised, namely, whether or not those prosecutions were the result of an arbitrary and unreasonable selective enforcement policy of the prosecuting municipalities.

Plaintiff's proofs with respect to the classification issue must be viewed in the light of the constitutionally acceptable purpose and policy of the 1959 Sunday Closing Law as painstakingly analyzed and definitively articulated by *Two Guys.* As this court understands the holding in *Two Guys,* that articulation proceeded from the premise that the First Amendment requires the Sunday Closing Law to be based on presently relevant secular considerations appropriately within the scope of the police power rather than on the frankly-avowed, religiously-motivated underpinnings of the predecessor prohibitory legislation.[2] Delineation of the secular purpose of the Sunday Closing Law as found by the court in *Two Guys,* requires clear appreciation of what *Two Guys* specifically held the secular purpose *not* to be.

Preliminarily, it is clear that First Amendment establishment considerations would not have precluded the Legislature from compelling a day of rest for all citizens, qualified only by works of necessity and charity, since such legislation would have met the secular evil of "impairment of public health consequent upon uninterrupted labor." 32 *N. J.* at 218. While recognizing the constitutionality of such a pur-

---

[2]And see, also, finding present secular content in Sunday Closing laws originally enacted to serve primarily religious purposes, *McGowan v. Maryland,* 366 *U. S.* 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961) ; *Two Guys From Harrison—Allentown v. McGinley,* 366 *U. S.* 582, 81 S. Ct. 1135, 6 L. Ed. 2d 551 (1961).

pose, the court was nevertheless constrained to conclude that that was not the purpose of the Sunday Closing Law. It reached that conclusion inductively, reasoning that if the objective of the law were to prevent uninterrupted labor, then the arbitrariness of the five category proscription would be patent.[3] As the court reasoned, if uninterrupted labor were the "conception of the evil, we cannot fathom any reasonable basis for the differentiation in chapter 119 of the work area embraced in the sale of the items it proscribes from the work area it leaves untouched." 32 *N. J.* at 219. The court, therefore, following the constructional principle of sustaining the constitutionality of legislation wherever possible and having to reject, on equal protection grounds, an "uninterrupted labor" thesis, extracted from the Sunday Closing Law, based both on its express provisions and on its adjudicated status as an implied repealer of all prior Sunday legislation, an expression of a public policy intention to which the classification might presumably be rationally related.

That public policy was understood by the court to be the Legislature's quite proper concern with preserving the secular virtues of Sunday as a day for rest, leisure, diversion and recreation. As the court said:

Today Sunday is many things to many people. It is a day upon which the vast majority of citizens seek respite from the pressures and demands of ordinary routines. To some, it is a day for religious devotion alone. To others, whether or not members of faiths commanding religious observance, it is a secular holiday, a day for play, hobbies, recreation or relaxation. To still others, it is a combination of all of these. It is a day for family and friendly reunions. Most people want Sunday for themselves to do as they feel they should, each to prepare himself in his own way to meet the demands of Monday morning. [32 *N. J.* at 216]

---

[3]Although surcease from uninterrupted labor was specifically rejected by the Supreme Court in *Two Guys* as the public policy intention of the Sunday Closing law, it has recently confirmed the constitutionality of that purpose where a classification problem was not raised. See *Schaad v. Ocean Grove Camp Meeting Ass'n.*, 72 *N. J.* 237 (1977).

The evil then which the court perceived as underlying the legislative intention was "unreasonable interference with the efforts of the vast majority of the citizens to find surcease from the pressures of the work week on the day generally selected by them for the purpose." 32 N. J. at 228. Thus, it was not inactivity which the Sunday Closing Law was intended to enforce but rather it was intended to reasonably afford the opportunity for those kinds of activities which are usually foreclosed by the demands of the work week and, which provide, as stated by the court, "relief from everyday tensions" (32 N. J. at 228) and "relief from the stress of everyday pursuits" (32 N. J. at 229). If the ban on the sale of the five proscribed categories does not, therefore, as a matter of fact, advance, promote or serve these precise objectives, then, as a simple tautological proposition, it is not rationally related to its presumed legislative purpose and the challenged classification must fail.

*Two Guys* lends further guidance to that effort which must now be made. Thus, as the court instructed, "the legislative body may * * * classify operations upon such considerations as the amount of traffic, noise, or other bustle, and weigh those factors against, not necessity or charity, but rather relative utility or convenience to the public." 32 N. J. at 228. Thus, in rejecting the plaintiff's claim of facial invalidity of the 1959 enactment, the court regarded itself obliged to "assume, as the facts may reasonably be, that the Legislature found the [proscribed] items * * * are the ones which, above and beyond all others, are provocative of the problem; that the elimination of their sale on Sunday will remove the undue interference with the opportunity of the citizens for relief from the stress of everyday pursuits." 32 N. J. 228–229. Finally, the court concluded, the demonstration of unconstitutional capriciousness cannot be made "merely by contrasting items which may and may not be sold. The relative utility of such items may be wholly unrelated to the degree of Sunday activity which their sale

incites and to the relief which a ban upon them will accomplish." 32 *N. J.* at 229.

According to this court's synthesis of the *Two Guys* rationale, in order to adequately demonstrate that the facts are not as the Supreme Court assumed they "may reasonably be" and thereby to now succeed where once they failed, plaintiff must show either that the classification is not at all related to the aim of affording the general public with relief from the stress of everyday pursuits or, if it bears some relation to that aim, its impact is not sufficiently significant in that regard to outweigh the public's inconvenience necessarily resultant from the ban imposed by the challenged legislation.

In deciding whether plaintiff's proofs have met either of these tests, the court should first make clear those matters which it does not regard as relevant or appropriate to its determination. The court's own view as to the good sense and sound judgment of the Sunday Closing Law has, of course, absolutely no place in the decisional process. Nor is the scope of its power to determine the constitutional challenge based on arbitrariness here raised any broader than the single classification question expressly reserved by *Two Guys.* Nor may the court be directly influenced by either consideration of the self-interested profit motive of the plaintiff who challenges the law or by the small retailers' fears of the personal adverse effects of full Sunday opening. The sole concern of this court is whether the classification scheme underlying this piece of legislation has been demonstrated to have failed to legitimately advance the welfare of the general public in the manner in which our Supreme Court has indicated that it might. It is on those terms alone, and based on the factual findings herein set forth, that this court is constrained to conclude that plaintiff has met its burden of proof.

Plaintiff produced as fact witnesses 12 of its employees and 12 police chiefs or other high-ranking police officials of municipalities in various of the closed counties. The testimony of these witnesses was primarily directed to the enforcement issue. Testimony dealing directly with the classification

problem was elicited essentially from plaintiff's three experts, Dr. Yehudi Cohen, an anthropologist, Warren Travers, a traffic engineer and consultant, and Dean Boorman, a land-use planner, and it is on that testimony that the success of the classification attack must rest.

Each of the three experts, dealing with the data appropriate to his particular discipline and interpreting and analyzing that data from the point of view of his particular professional concern and competence, arrived at essentially the same thesis, namely, that the ban on the sale of the five proscribed categories of goods both fails to advance the opportunity of the general public for recreation, diversion and leisure on Sunday, and, moreover, affirmatively impedes and interferes with that opportunity. The synthesized basis of that thesis is that unrestricted shopping, and particularly family shopping, is itself a frequently preferred leisure-time activity, and that that activity, when engaged in on Sunday by those who prefer to do so, will not appreciably impinge upon the opportunity of others to spend their Sunday in such other leisure-time pursuits as they may prefer. This court is satisfied that this thesis is conceptually within the scope of the reservation of *Two Guys,* and hence, if it is found to have been adequately proved, the unconstitutional arbitrariness of the classification will have been demonstrated.

In assessing plaintiff's success in proving this thesis it must again be pointed out that *Two Guys* had assumed, in the absence of facts to the contrary, that the Legislature had determined that out of all other potential commercial activity, sale of the proscribed items would be particularly generative of circumstances which would interfere with the public's opportunity to pursue recreational, leisure and diversionary activities. When that legislative determination was made, however, the predecessor Sunday legislation was still in effect. That legislation, essentially, proscribed the engaging in all "worldly employment or business" on Sunday, except for works of charity and necessity (*N. J. S. A.* 2A:171-1) and except for the sale of drugs, food and bev-

erages (*N. J. S. A.* 2A:171–2).[4] Thus, when *N. J. S. A.* 2A:171–5.8 *et seq.* was adopted in 1959, there was then no existing evil of interference with the public's opportunity to pursue nonworkday activities on Sunday because virtually all workday activity was already banned. The legislative conception of the evil, therefore, could not have been based on any existing state of facts or accumulation of empirical data, but rather on the view, untested by experience, that the evil could be avoided by permitting all manner of commercial activity — for example, manufacturing, processing, service businesses, professional services, warehousing, farming, fishing, mining, forestry, building and road construction, wholesale sales and indeed most retail sales — provided only that clothing, lumber, furniture, furnishings and appliances could not be sold at retail.

*Two Guys,* in its reluctance to hold this categorization facially arbitrary, suggested various factual hypotheses which might support its reasonable relationship to the legislative purpose. Chief among these was the potential traffic consequence of unrestricted shopping, described by the court as commercial activities, adding "highway traffic to the discomfort of the Sunday driver and otherwise [impinging] upon a scene conducive to rest, diversion and recreation." 32 *N. J.* at 216. Accordingly, plaintiff's proofs were largely directed towards demonstrating that the traffic impact of Sunday shopping would not constitute an unreasonable interference with the public's opportunity to pursue relief from everyday pursuits. The court, in concluding that it was successful in this endeavor, relies largely upon the testimony of both Travers and Boorman.

---

[4] *N. J. S. A.* 2A:171–2 was amended in 1959 to add perishable horticultural and agricultural products as goods which might be legally sold on Sunday. That amendment was adopted after the enactment of *N. J. S. A.* 2A:171–5.8 *et seq.*, but before the *Two Guys* decision, which held that *N. J. S. A.* 171–5.8 had repealed *N. J. S. A.* 2A:171–2.

Travers, a traffic consultant whose background, qualifications and credentials are impressive, was retained by plaintiff to assess, based on all available data, the probable traffic consequence of state-wide unrestricted Sunday shopping. Because unrestricted Sunday shopping is presently permitted in 11 of the 21 counties, his initial approach was to compare the ratio of highway use on weekdays as against Sundays in both open and closed counties. The purpose of the comparison was, obviously, to determine whether the opportunity for unrestricted retail shopping in the open counties had in fact added appreciably to Sunday traffic. In making this comparison he selected three pairs of general purpose state highways, Route 17 in Bergen County (closed) and Route 40 in Atlantic County (open); Route 35 in Monmouth County (closed) and Route 37 in Ocean County (open); and Route 22 in Somerset County (closed) and Routes 1 and 130 in Mercer County (open). Each of these was selected because of its similarity to the road with which it was paired, both in the nature of its traffic patterns and its abutting uses. Additionally, Routes 17 and 40 were selected because each is a major access-way to heavily-used summer resort areas, Route 17 to the Catskill Mountains of New York State and Route 40 to the southern shore area of this State. Routes 35 and 37 were also selected because of their use for shore traffic. Routes 22 and 1 and 130 were chosen as representative of highways not significantly used for travel to and from major resort areas. These highways all were also used for this study because at critical points on all of them the State Department of Transportation maintains devices which count the vehicles actually traversing them. Using average weekday traffic as 100%, Travers then charted the percentage of Sunday use of each pair for the same recent two-year period.[5]

---

[5]Relying on the most recent complete available data from the Department of Transportation, the Route 17/40 and Route 35/37 studies were based on average use in 1972 and 1973. The Route 22/1 and 130 study was based on average use in 1974 and 1975.

The result of this study is at first blush, surprising. With respect to the four recreational highways, each of the open-county roads had virtually the same ratio of summer Sunday traffic to summer weekday traffic as had the closed-county road with which it was paired. The percentage of use for the remainder of the year, Sunday as opposed to average week-day, was also substantially similar, with the exception of a more intense Sunday use of Route 35 in the spring than is made of Route 37. The charting of the nonrecreational routes showed that Route 22 in the closed county of Somerset was more heavily used proportionately on Sunday throughout the year than were the comparable Routes 1 and 130 in the open county of Mercer.

The inference raised by these data was further forcefully supported by Travers' study of the same roads in Mercer County both before and after its 1969 abandonment by referendum of Sunday closing. For this study he used both Routes 1 and 130 and compared for each the percentage of Sunday use to average weekday use in 1967 and 1968 as opposed to 1970 and 1971. The percentage of Sunday use had actually declined after full Sunday opening was permitted.

Travers' explanation of these phenomena, supplemented by the testimony of Boorman, persuades the court that, as a general proposition and despite the possibility of some occasional exception, the Sunday proscription of the sale of the five proscribed categories does not appreciably contribute to freeing the highways for recreational and other leisure-time traffic. That explanation, accepted by the court, was based upon the following considerations, each of which is found to have been adequately supported by facts in evidence.

1. The extent of voluntary Sunday closing in open counties and the extent of the retail sale on Sunday of un-proscribed goods in closed counties have tended to produce a homogenizing effect on general-purpose highway traffic throughout the State. That homogenizing effect is, in part, produced by the fact that sale of the unproscribed items as a

group generates more trips than does sale of the proscribed items as a group. Typical drugstore purchases, it was Travers' opinion, generate the largest number of retail sale trips per square foot of floor space. Next come food sales. It was his further opinion that while clothing sales and building supply sales each generate approximately one-half the number of trips as food sales, each of the other three proscribed categories generates only one-twentieth or less of the number of trips. The relatively recent and widespread decision of the major food supermarket chains to remain open on Sunday in closed counties, has, because of the high volume of food-sale trips, further contributed to that homogenizing effect. Finally, the homogenizing effect is attributable to cross-county Sunday traffic by closed-county residents driving to open counties in order to shop unrestrictedly. The court further notes that that cross-county traffic is at least potentially added to by cross-Hudson traffic generated by the Sunday travel of closed-county residents to New York for shopping purposes.[6] This cross-county and inter-state traffic is further evidenced by the fact that according to the 1970 federal census, approximately 28% of New Jersey residents live in open counties, approximately 32% live in closed counties immediately adjacent to open counties, and some 41% live in closed counties immediately adjacent to New York State.

2. Shopping traffic does not by itself appreciably add to Sunday traffic because of the increasing multi-nature purpose of round-trip automobile travel. It was thus Travers' testi-

---

[6]The Sunday Closing Laws of New York State were declared unconstitutional on June 17, 1976 by *People v. Abrahams*, 40 *N. Y.* 2d 277, 386 *N. Y. S.* 2d 661, 353 *N. E.* 2d 574 (Ct. App. 1976), with consequent widespread Sunday opening in that State. It should further be noted that the Connecticut Sunday Closing Law has also recently been held to be unconstitutional. *State v. Anonymous*, 33 *Conn. Sup.* 141, 366 *A.* 2d 200 (C. P. 1976). Both the New York and the Connecticut decisions were based on the facial arbitrariness and irrationality of their respective Sunday Closing Law classifications, a *ratio decidendi* here foreclosed by *Two Guys*.

mony that increasingly, except for work commutation and medical emergencies, an automobile trip from home to home will typically involve several 'stops and that the stops individually or collectively or both will combine such purposes as personal business, shopping and social and recreational transactions. Hence, a driver otherwise on the roads on Sunday for primarily nonshopping purposes is likely to be doing some shopping as well. Furthermore, Sunday shopping within closed counties for food, drugs and other unproscribed items tends to produce a greater proportion of single-purpose shopping trips than in open counties, where the Sunday shopping trip is more likely to be multi-purchase shopping. Thus, the effect of the Sunday proscription has been to reduce the categories of purchasable items without necessarily reducing the number of shopping trips.[7]

3. Shopping traffic, whether on Sunday or not, does not discernibly affect traffic on the State's system of limited access superhighways, which have been considerably improved and expanded since 1960. Those highways are not appreciably used by shoppers to reach areas of retail sales, have themselves no roadside uses, and bear the major burden of intermediate and long-range automobile travel to, among other places, major resort areas. Furthermore, Sunday weekend traffic peaks on the limited access highway system in the evening, after most shopping would have been completed.

4. When Sunday shopping is available and unrestricted, the experience of major retail centers is that Sunday shopping generates approximately 40% of the traffic generated on Saturday. Average weekday shopping generates 60% of Saturday shopping traffic. A substantial proportion of this 40%, however, is attributable to shopping for only unproscribed items or for both proscribed and unproscribed items

---

[7]The experts further suggested that the increased number of trips and the cross-county travel generated by the present ban involve excess fuel consumption, not an insignificant consideration.

and is also likely to represent a combination of the shopping trip with other purposes.

5. While the emphasis of Travers' testimony was placed on highway traffic, it was his opinion, nevertheless, that local traffic would be virtually unimpacted by Sunday shopping for essentially the same reasons.

Plaintiff's experts addressed themselves not only to automobile traffic but also to the general aura of "hustle and bustle" referred to in *Two Guys* as potentially detracting from the enjoyment of Sunday. It was their theory that the "hustle and bustle" attributable to the sale of proscribed categories over and above that attributable to the sale of permitted categories is generally confined to the immediate areas where such activities are carried on, namely, highway shopping centers and central business districts. They pointed out that these commercial concentrations are usually geographically separated from residential neighborhoods and, therefore, do not substantially affect the peace and quiet of such neighborhoods.

In terms of the potentially negative consequences of unrestricted Sunday shopping, it has already been indicated that the purpose of providing relief from uninterrupted labor was rejected by *Two Guys* as the underlying policy of the Sunday Closing Law.[8] Nevertheless, in that context, it is significant to note, as testified to by Boorman based on his analysis of census data, that as of 1972, only 13.7% of employed New Jersey residents were employed in retail sales and only 3.6% employed in the retail sale of proscribed items. Adjusting this figure to reflect retail sales in open

---

[8] It would be naive in the extreme if the court did not recognize that as a result of the labor union movement, as well as passage of statutes directly aimed at controlling the work week, the vast majority of the population does not work on either Saturday or Sunday; that those who do have two other days a week off, and that in terms of preventing uninterrupted labor, the Sunday blue laws, all deriving from religious consideration prevailing in the American Colonies of the 17th and 18th Centuries, are an evident anachronism.

counties, it was his conclusion that only 2.9% of New Jersey's total work force is presently affected by the ban.

Plaintiff's thesis was based, as noted, not only on the contention that the elimination of the present limited shopping ban would not unreasonably interfere with the diversionary pursuits of those who do not wish to shop on Sunday but also on the contention that the present ban interferes unreasonably with those who do wish to shop on Sunday. The basis of that contention is twofold: first, that the shopping expedition is itself a form of diversion and recreation, and second, that most people ordinarily have the entire weekend, both Saturday and Sunday, free from employment obligations, and their inability to shop on Sunday unreasonably impinges on their opportunity to order their weekends flexibly, efficiently, and in a manner which maximizes their enjoyment of their free time.

The testimony of the experts that shopping is recreational in itself for many people is virtually a matter of common understanding. Indeed, that it is an activity generally associated with the use of leisure time is the evident explanation for the resistance by the resort areas of the State to Sunday closing during the legislative activity on the subject in the 1950s. See *Two Guys,* 32 *N. J.* at 210. The recreational values of shopping are further demonstrated by the proliferation of flea markets which enjoy regular and substantial patronage. Moreover, the regional and some of the community shopping centers are planned to include such direct recreational facilities as movies, theatres, skating rinks, bowling alleys, restaurants, galleries and auditoriums, which, together with the customary amenities of the mall areas themselves, provide opportunities for both direct and indirect recreation in combination with the shopping trip.[9] As Dr.

---

[9]This replacement by the full service modern shopping mall of the urban central business district and the consequent adverse effect thereof on the continued viability of inner city commercial areas are independent phenomena not only unrelated to partial Sunday closing

Cohen further pointed out, in modern American life diversion and recreation must be defined to include all activities in which the members of a nuclear family can engage in together in their free time. Shopping on Sunday when all the family members are free is one of these. Such shopping further enhances the quality of family life by providing family members with an opportunity to participate together in making major purchases and to share generally in an experience of mutual interest and concern. Of further significance in terms of family life is the unreasonable inconvenience which the present proscription imposes upon the increasingly large numbers of married women and particularly married mothers in the general labor force who, of necessity, must compress the family's shopping needs into an already over-demanding Saturday schedule. Unrestricted Sunday shopping would also have the positive effect of relieving the stress, tension and traffic congestion which presently result from the intensity of Saturday as the primary shopping day. Moreover, the availability of Sunday as an unrestricted shopping day would tend to spread diversionary activities over the entire weekend, thus relieving structured recreational facilities from the intensity of their present Sunday use.

Defendants did not produce any expert witnesses of their own to refute any of these theses or the facts on which they were based, and the court is satisfied that they were not substantially refuted by defendants' cross-examination of plaintiff's experts.

In view of all of the foregoing, the court is convinced that plaintiff has proved that the classification here attacked fails to promote and enhance the quality of the secular concept of Sunday sought to be protected by the Legislature. The classification is, therefore, held to be not reasonably related to the presumed purpose of the statute and is, hence, unconstitutionally arbitrary. The Sunday Closing Law, as set forth in *N. J. S. A.* 2A:171-5.8 *et seq.,* cannot stand.

but also expressly rejected by *Two Guys* as having motivated enactment of the Sunday Closing law. 32 *N. J.* at 227.

■ The holding therein renders moot plaintiff's challenge both to the Sunday Closing Law itself and to the six municipal prosecutions here involved based on the alleged enforcement problems. The court is, however, satisfied that these challenges are without merit. The first of these is predicated on the assertion that the categorization of proscribed goods is so vague and ambiguous that even law enforcement officers do not clearly understand what may be sold and what may not be sold. Not only is that argument foreclosed as a matter of law, *State v. Monteleone,* 36 *N. J.* 93 (1961); *State v. K-Mart,* 141 *N. J. Super.* 546 (App. Div. 1976), but further, this court finds it to be unsupported by the facts. Plaintiff relies on some prosecutorial disagreement, expressed in memoranda circulated among the local police departments by several of the county prosecutors of closed counties, as to the Sunday saleability of specific items. It also suggests that the relatively small number of prosecutions throughout the State since enactment of the Sunday Closing Law evidences an inability of law enforcement authorities to distinguish between proscribed and unproscribed goods. It points as well to the now familiar litany of anomalies between goods which may be sold and those which may not. See, *e. g.,* the dissenting opinion of Justice Francis in *Two Guys,* 32 *N. J.* at 237. The court, however, is nevertheless satisfied that, except for the relatively small number of marginal cases falling within the inevitable fringe area, there is in fact a clear general understanding of the scope of the proscription by both law enforcement officials and by retailers, and that the paucity of actual prosecutions for violations of the law is primarily attributable to the consistently high level of voluntary compliance therewith by the retailers. The classification may be unconstitutionally arbitrary in terms of the legislative purpose. It is not, however, either unconstitutionally vague or inherently irrational.

■ In support of its claim of selective enforcement, which plaintiff contends vitiates the pending prosecutions on Fourteenth Amendment illegal discrimination grounds, it relies

primarily on *People v. Acme Markets, Inc.*, 37 *N. Y.* 2d 326, 372 *N. Y. S.* 2d 590, 334 *N. E.* 2d 555 (Ct. App. 1975). There the court dismissed pending prosecutions brought by Erie County against various food supermarkets for Sunday Closing Law violations. The dismissal was based on the finding that the law, at least in that area of the State, had been for some time massively and flagrantly violated with the knowledge and acquiescence of law enforcement agencies, and further, that the prosecutions in question had been instigated by a labor union which objected to Sunday sales because they had resulted in the hiring of part-time non-union labor. This combination of facts constrained the court to conclude that the prosecutions were indeed the product of invidious discriminatory enforcement. Plaintiff sought to bring itself within the operative factual complex of *Acme Markets* by attempting to demonstrate widespread violation of the law in the closed counties and prosecution only at the behest of the Menswear Retailers Association, whose members do admittedly occasionally seek out and report violations to the local police authorities. The proofs here, however, unlike those in *Acme Markets,* do not indicate a total surrender of enforcement to a private interest group. Most of the police departments in those municipalities in closed counties in which large retailers remain partially open on Sunday do, in fact, spotcheck these operations regularly by the use of plain-clothes detectives. More significantly, there was insufficient proof here of massive and widespread violation. As already indicated, there is massive and widespread compliance. The court does not consider the still relatively isolated Sunday flea market operation or the occasional sale by food and drug chains of fringe items as amounting to anything like an effective abandonment of the law by either police authorities or retailers.

For the reasons herein set forth, plaintiff is entitled to the relief it seeks. The pending prosecutions are permanently enjoined because *N. J. S. A.* 2A:171–5.8 *et seq.* is unconstitutionally arbitrary in its classification.