OPINION OF THE COURT
Angelo Mauceri, J.
The defendants are clammers, charged with taking shellfish from uncertified waters, a misdemeanor defined in ECL 13-0309 (subd 1). They claim first that the District Attorney has no authority to prosecute them, and second, that prosecution of them is discriminatory and violates the equal protection *818 guarantee of the Constitution. The District Attorney opposes defendants’ first argument and joins in the second one.
Defendants argue that the State Attorney-General has the exclusive right to prosecute violations of the Environmental Conservation Law. They cite ECL 71-0505 (subd 2) which says: "It shall be the duty of the Attorney General, when requested by the [Environmental Conservation] department * * * to conduct all prosecutions for penalties imposed by the provisions of this chapter * * * or under titles 5 through 15 inclusive * * * and to bring all actions, suits and proceedings, which the department shall be authorized to institute and maintain”. Thus the defendants argue that this section indicates that only the Attorney-General has power to prosecute misdemeanors and violations under the Fish and Wildlife Law. (ECL 13-0101.)
The People oppose, arguing that ECL 71-0505 refers only to civil suits to enforce "penalties” described in the Environmental Conservation Law and that such civil enforcement by the Attorney-General is limited to situations where the Environmental Commissioner orders such action.
Indeed, this interpretation can be supported by a reading of the plain language of the statute as well as a survey of the enforcement sections taken in their total context. The law clearly encompasses two modes of enforcing ECL statutes: the first being the traditional criminal prosecutions of misdemeanors and violations within the District Attorney’s realm, and the second being actions for civil penalties which must be brought by the Attorney-General in the name of the People. The defendants’ confusion seems to stem from their construction of the term "penalties” to include criminal sanctions. However, in the context of article 71 (enforcement), actions for penalties, though brought in the name of the People, have all the aspects of civil actions. Under ECL 71-0507 and 71-0519 they may be compromised, settled or discontinued, all being civil dispositions. Under ECL 71-0509, costs are recoverable by the People at the same rates of civil actions. Also, judgments recovered by the People are enforceable by contempt and may be executed against the defendant’s property (ECL 71-0511, 71-0519). A civil judgment for the People bars a criminal action for the same violation if it is satisfied within 30 days of the date of entry thereof. (ECL 71-0519.)
In regard to criminal liability, however, the term "punishment” or "criminal sanction” is used (ECL 71-0515; now ECL *819 71-0919). The sanctions specified for the various misdemeanors and violations therein are defined in terms of imprisonment and fines. Under subdivision 1 of section 10.00 of the Penal Law, such conduct for which jail or fine is prescribed by any State law amounts to an "offense”. Under section 700 of the County Law it is the duty of the District Attorney to prosecute all such offenses.
Thus defendants’ argument that the District Attorney lacks authority to prosecute is in error.
The defendants next allege a violation of the equal protection clause of the Constitution in that there has been a vigorous and sustained prosecution of clammers for taking shellfish from uncertified (or polluted) waters (ECL 13-0309) while at the same time the State "fails, refuses, or neglects to undertake to abate and prevent water pollution” (defined in ECL 13-0345). The defendants continue: "There is a strong repugnancy and abhorrence against society when the very same state agency takes absolutely no steps against those who cause the very water pollution which then forms the legal ambience for legal prosecution of those who merely take natural shellfish therefrom.”
The charge of taking shellfish from uncertified waters, according to the clammers, is the equivalent of taking shellfish from waters deemed polluted by the Environmental Conservation Department, because it is that office that decrees which waters are to be certified, based upon level of contamination, for taking shellfish. Thus the clammers charge invidious discrimination against them as a class while industrial businesses break pollution laws with impunity.
Surprisingly, the District Attorney’s office joins in defendants’ argument and states that both sides are entitled to a pretrial hearing to determine whether these and all prosecutions of clammers are being done pursuant to a State policy of discriminatory law enforcement ultimately designed to eliminate the clamming industry.
The People submit that as a matter of public record the court may take judicial notice of the fact that the State-employed conservation officers have never criminally prosecuted a water polluter in this court. The People state that although trained and equipped by the State and certified to read and detect pollution, these officers have never used their expertise and skill in a criminal proceeding against any polluter.
*820 Discriminatory enforcement of the law is prohibited because it violates the constitutional guarantee to equal protection under the law. The premier case dealing with this issue by the United States Supreme Court involved the prosecution of a Chinese laundry operator doing business without a license where the licensing board consistently rejected Chinese applicants. The court stated: "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.” (Yick Wo v Hopkins, 118 US 356, 373-374.) The Yick Wo opinion emphasized that the licensing board’s discretion was arbitrarily exercised and stated that the board failed to justify their refusal to permit Yick Wo and other Chinese persons to carry on their "harmless and useful occupation”.
In People v Acme Markets (37 NY2d 326) the Court of Appeals held that there was a discriminatory enforcement of the Sunday sales law where supermarket owners were singled out for prosecution while the "Mom and Pop” general stores were by design excluded, and there had been no policy of general enforcement. In People v Utica Daw’s Drug Co. (16 AD2d 12) the court held that another blue law conviction should be reversed and the court should not lend itself to a prosecution where intentional and purposeful discrimination had been shown.
The burden of proving discriminatory enforcement is upon the complainant and this burden is not lightly met. (People v Utica Daw’s Drug Co., 16 AD2d 12, 19, supra; People v Goodman, 31 NY2d 262, 268.) The defendant must come forward with evidence of unequal application of a statute fair on its face. (Id.)
In this case, both defendants and the People state that the clamming business is doomed because of zealous prosecution by the District Attorney. However, this claim of discrimination against persons for pursuing their occupation differs in several respects from reported cases permitting consideration of this defense.
The statute here involved is closer to the malum in se than the malum prohibitum variety because the underlying acts of *821 clamming from polluted waters presume in theory an intent to foist contaminated shellfish upon the public.
In Yick Wo the laundering business was legitimate but for the denied license, and in Acme Markets and Utica Daw’s Drug Co. the supermarket and drug store businesses respectively were legitimate but for the day of the week. Clamming in and of itself is a valuable and wholesome trade, but clamming from polluted waters is not, where the probably contaminated shellfish are foisted, along with the clean shellfish, upon the public market and onto consumers’ dinner tables. Just as the general public somehow suffers mentally or emotionally by being deluged with pornographic or obscene materials in pandering cases, it can suffer physically when its members unsuspectingly eat rotten, contaminated or possibly cancer inducing shellfish. In an analogous California case affirming a pandering conviction, the court stated that a discriminatory enforcement defense was not available in a prosecution of an offense malum in se. The court said in People v Montgomery (47 Cal App 2d 1, 14): "While all persons accused of crime are to be treated on a basis of equality before the law, it does not follow that they are to be protected in the commission of crime. It would be unconscionable, for instance, to excuse a defendant guilty of murder because others have murdered with impunity. The remedy for unequal enforcement of the law in such instances does not lie in the exoneration of the guilty at the expense of society.”
This case is unique in that the defendants claim discrimination because another class of individuals is not prosecuted under a different statute. To hold that a prosecution of a clammer based upon his race, religion, or the fact that he has expensive power equipment while other clammers without such equipment are intentionally ignored might justify a claim of discriminatory enforcement. However, where all clammers are uniformly prosecuted, a policy of permitting illegal clamming because polluters remain at large defies logic and good sense. No cases could be found where a claim of discriminatory enforcement was made based on another group’s violation with impunity of a different law. To allow such claim would be the equivalent of excusing sex offenses because adultery laws are not enforced.
This by no means condones acts of polluters, which are worse in their cumulative effect because they create the need for protecting the public against contaminated shellfish. What *822 ever the reason the State has for failing and refusing to require trained and salaried personnel to do their jobs, it is not within the jurisdiction of the! District Court to so order. The media and not the criminal courtroom is the more appropriate forum to draw attention and provide information to the public regarding the State’s alleged laxity in this situation because officials controlling State policy are accountable to the public. The District Attorney, likewise, is accountable to the electorate for decisions regarding his discretion in either emphasizing or shelving prosecution. If the District Attorney feels that the clammers are being unjustly accused it is within his prerogative to refuse to prosecute these criminal charges and to ask for a dismissal. This court does not have that authority as the laws of this State are now written. If the State is not prosecuting those responsible for the pollution of our waters then it is also the duty of the District Attorney to bring that matter to the attention of the appointing power and the State Legislature. The State’s reason for labeling certain waters uncertified is not in issue here and should be challenged in a different forum. Neither the defendants nor the People have shown sufficient grounds to warrant a hearing on the issue of unequal enforcement of the law, but since both parties have consented and agreed and request a hearing on that point the court will order that hearing for January 30, 1978, at 9:30 a.m. at the First District Court in room 204.