VORNADO, INC., A CORPORATION OF THE STATE OF DELAWARE, T/A TWO GUYS, *ET AL.*, PLAINTIFF-RE-SPONDENT-CROSS-APPELLANT, v. WILLIAM F. HY-LAND, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, AND CITY OF HACKENSACK, TOWN OF KEARNY AND MENSWEAR RETAILERS OF NEW JERSEY, INC., DEFENDANTS-AP-PELLANTS-CROSS-RESPONDENTS, AND BOROUGH OF LODI, CITY OF GARFIELD, TOWNSHIP OF NORTH BER-GEN AND CITY OF VINELAND, DEFENDANTS.

Argued April 11, 1978—Decided July 18, 1978.

348

*Mr. Edward G. Rosenblum* argued the cause for appellant Menswear Retailers of New Jersey, Inc. (*Messrs. Rosenblum and Rosenblum,* attorneys).

*Mr. Norman A. Doyle, Jr.* argued the cause for appellant Town of Kearny.

*Mr. Seymour Chase* argued the cause for appellant City of Hackensack.

*Mr. Frank J. Cuccio* and *Mr. Jack Dashosh* argued the cause for respondent-cross-appellant (*Messrs. Jones, Cuccio and Klinger and Jack Dashosh,* attorneys; *Gary S. Redish* on the brief).

*Mrs. Erminie L. Conley,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Mrs. Conley,* on the brief).

*Mr. Robert A. Vort* submitted a brief on behalf of *amicus curiae* American Civil Liberties Union of New Jersey.

*Messrs. Robinson, Wayne and Greenberg* submitted a brief on behalf of *amicus curiae* Hahne and Company (*Mr. Robert A. Wayne,* of counsel; *Mr. Edward F. Lamb,* on the brief).

*Messrs. Ravin, Davis and Sweet* submitted a brief on behalf of *amicus curiae* Small Retailers for Sunday Opening (*Mr. Alan E. Davis* and *Mr. Gerard C. Sims, Jr.,* of counsel and on the brief).

*Messrs. Clapp and Eisenberg* submitted a brief on behalf of *amicus curiae* B. Altman and Company, et al (*Mr. Stuart L. Pachman,* on the brief).

*Messrs. Kimmelman, Wolff and Samson* submitted a brief on behalf of *amicus curiae* The New Jersey Committee for Full Sunday Shopping (*Mr. Irwin I. Kimmelman,* of counsel; *Mr. Armen Shahinian,* on the brief).

*Messrs. Lum, Biunno and Tompkins* submitted a brief on behalf of *amicus curiae* R. H. Macy and Company, Inc., et al.

The opinion of the court was delivered by

CONFORD, P. J. A. D. (temporarily assigned). Pending appeal in the Superior Court, Appellate Division, this Court granted direct certification to review a holding by the Superior Court, Law Division, 148 *N. J. Super.* 343, that the classification of merchandise forbidden to be sold on Sunday under and pursuant to the Sunday Closing Law, *N. J. S. A.* 2A:171-5.8 *et seq.* (*L.* 1959, *c.* 119), in counties opting for the statute by referendum, is "not reasonably related to the presumed purpose of the statute and is, hence, unconstitutionally arbitrary." 148 *N. J. Super.* at 360. The assumption must be that the constitutional defect discerned was the denial of equal protection of the laws, as the ruling purports to decide the question left open for factual exploration in our decision in *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199 (1960) (*"Two Guys,"* hereinafter). That issue was denial of equal protection. See *id.* at 211, 222.

The Sunday Closing Law was held in *Two Guys* to supersede and replace the 1951 revision of earlier Sunday closing legislation which comprehensively prohibited all Sunday employment or business except for works of necessity or charity. *N. J. S.* 2A:171-1 *et seq.* The 1951 revision contained only a $1 penalty for any violation. The present statute, adopted in 1959, provided that it should be effective

only in counties which chose to adopt it by referendum, and prohibited Sunday sale of only (1) clothing or wearing apparel; (2) building and lumber supply materials; (3) furniture; (4) home, business or office furnishings; and (5) household, business or office appliances. Substantial penalties were provided for violation. The law is presently effective in ten of the twenty-one counties.

*Two Guys* sustained the Sunday Closing Law against attack on grounds of violation of the constitutional ban against union of State and Church in both the federal and state constitutions. 32 *N. J.* at 226. It found adequate secular legislative objects for Sunday closing legislation in (1) relief from uninterrupted labor for seven days a week; and (2) eliminating or reducing interference with the ambiance of Sunday as a generally accepted common day for rest, relaxation, relief from everyday tensions and recreation (hereinafter, the "rest and relaxation object"). 32 *N. J.* at 215–216. However, the first basis was determined not to be rationally related to the classification of the Sunday Closing Law as it was relevant to all workers, not peculiarly those engaged in selling the five categories of proscribed merchandise. *Id.* at 218–219. The Court went on to hold the law facially valid from the standpoint of the rest and relaxation objective, but reversed a summary judgment dismissing the constitutional attack as related to that statutory purpose, ruling that while it might indeed "be difficult for plaintiffs to maintain their heavy burden of proof * * * they may not be denied an opportunity to try." *Id.* at 230.

The plaintiffs in the present case, who comprise the corporate successor of the plaintiff in the *Two Guys* case and certain of its employees, purport now to have adduced the proof requisite to establish the denial of equal protection not found as a matter of law in *Two Guys*. The trial court concluded that they were successful in that endeavor. We granted certification while the matter was pending unheard in the Appellate Division, 75 *N. J.* 584 (1977). We are constrained to disagree, and we reverse. We find trial error

in two broad respects: (a) with respect to the court's conception of the nature of the judicial responsibility *vis a vis* that of the Legislature in this area; and (b) with regard to the adequacy of the proofs submitted by plaintiffs to negate all reasonably conceivable purposes or objects for the statutory classification.

We find no merit in the cross-appeal of plaintiffs addressed to alleged vagueness of the statute and to the asserted selective and discriminatory enforcement thereof. We agree with the trial court's rejection of those contentions. See 148 *N. J. Super.* at 361–362.

I

Before examining the evidence in the case before us and the rationale of the trial court in holding it sufficient to invalidate the Sunday Closing Law, it is well to be reminded of certain cardinal principles required to be followed by the judiciary in passing upon the question as to whether a statutory classification of subject matter is invalid as a denial of the equal protection of the laws. Apart from the general presumption of constitutionality which attends every statute, the heart of the applicable criterion was expressed in *WHYY Inc. v. Glassboro*, 50 *N. J.* 6, 13 (1967), rev'd 393 *U. S.* 117, 89 *S. Ct.* 286, 21 *L. Ed.* 2d 242 (1968),[1] as follows:

The Legislature is presumed to have a valid classification in mind. Distinctions will be presumed to rest upon a rational basis if there be *any conceivable state of facts* which would afford reasonable support for them. (emphasis added).

The formidable nature of the burden resting on those who would establish the invalidity of a statutory classification in

---

[1]The reversal by the United States Supreme Court was not on any disagreement with the standard but on the State Supreme Court's application of the standard.

an equal protection context is well delineated in *N. J. Restaurant Ass'n. v. Holderman,* 24 *N. J.* 295, 300 (1957), as quoted in *Two Guys* (32 *N. J.* at 218), as follows:

The burden of demonstrating that a statute contravenes the equal protection clause is extremely formidable, as is attested by the long trail of failure. In addition to the strong presumption of constitutionality with which all organic challenges are approached, one who assails a statute on this ground must contend with principles of unusual elasticity. It is easily stated that the classification (1) must not be palpably arbitrary or capricious, and (2) must have a rational basis in relation to the specific objective of the legislation. But the second proposition is qualified by limitations which compound the difficulties of one who assails the legislative decision. Thus it is not enough to demonstrate that the legislative objective might be more fully achieved by another, more expansive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt. [Citations omitted.] The Legislature may thus limit its action upon a decision to proceed cautiously, step by step, or because of practical exigencies, including administrative convenience and expense, * * * or because of "some substantial consideration of public policy or convenience or the service of the general welfare." *De Monaco v. Renton,* 18 *N. J.* 352, 360 (1955). Hence it may "stop short of those cases in which the harm to the few concerned is thought less important than the harm to the public that would ensue if the rule laid down were made mathematically exact." *Dominion Hotel, Inc. v. State of Arizona, supra* (249 *U. S.* [265] at page 268, 39 *S. Ct.* [273] at page 274 [63 *L. Ed.* 597]). * * *"

Chief Justice Weintraub went on in *Two Guys, supra,* to say (32 *N. J.* at 219):

As stated in *Holderman,* a discrimination which in the nature of the subject matter would otherwise be invidious may be relieved of that character if, generally speaking, a rational basis may be found for it in terms of degrees of evil or in the practical problems inherent in the process of legislating or in enforcement.

\*        \*        \*        \*        \*        \*        \*        \*

The reason why a Legislature may strike at an evil where it finds it without first surveying the entire scene in which it may exist even in equal degree is an inescapable concession to the practicalities of a complex social and economic order. The legislative process would be hamstrung if the Legislature had to explore every nook and corner before it acted.

Subsequent to the decision in *Two Guys* the United States Supreme Court sustained the validity of Sunday closing statutes in Maryland and Pennsylvania, both containing numerous and varied exemptions, against attack on various grounds including denial of equal protection. *McGowan v. Maryland*, 366 *U. S.* 420, 81 *S. Ct.* 1101, 6 *L. Ed.* 2d 393 (1961) ; *Two Guys from Harrison-Allentown v. McGinley*, 366 *U. S.* 582, 81 *S. Ct.* 1135, 6 *L. Ed.* 2d 551 (1961). In *McGowan* the Court said:

* * * Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

366 *U. S.* at 425–426, 81 *S. Ct.* at 1105.

The Court held that the Legislature "could reasonably find" a rational basis for each of the exemptions, whether in fact, local tradition or custom. *Id.* at 426–428, 81 *S. Ct.* 1101.

In his classic concurring opinion in the *McGowan* case, Justice Frankfurter said:

* * * The applicable principles are that a state statute may not be struck down as offensive of equal protection in its schemes of classification unless it is obviously arbitrary, and that, except in the case of a statute whose discriminations are so patently without reason that no conceivable situation of fact could be found to justify them, the claimant who challenges the statute bears the burden of affirmative demonstration that in the actual state of facts which surround its operation, its classifications lack rationality. 366 *U. S.* at 459, 535, 81 *S. Ct.* at 1153, 1194.

■ Courts have a paramount obligation not to invalidate legislation merely because they disapprove its public policy.

To yield to the impulse to do so is to subvert the sensitive interrelationship between the three branches of government which is at the heart of our form of democracy. In this regard, one cannot overemphasize the admonition of the Chief Justice in *Two Guys,* when he said:

It is worth repeating that the Judiciary is not concerned with the good sense of a statute. Policy matters are the exclusive responsibility of the legislative branch of government. A judge, as a private citizen, may express his opinion at the polls, as every member of this court had the opportunity to do when chapter 119 was on the ballot. But the issue now before us is wholly one of the power of the Legislature to act, and upon that inquiry a judge would usurp authority if his personal view of policy intruded upon his deliberations.

32 *N. J.* at 229.

So much established introductorily, we turn to the matter of the rationality of the classification of the Sunday Closing Law. The first relevant inquiry is as to the object or objects of the law. As noted above, *Two Guys* declared the pertinent object to be that of reducing or eliminating interference with Sunday as a common day of rest and relaxation. The trial court considered the constitutional issue as merely whether unrestricted Sunday shopping by those who wish to do so "will * * * *appreciably* impinge upon the opportunity of others to spend their Sunday in such other [than shopping] leisure-time pursuits as they may prefer" (emphasis added). 148 *N. J. Super.* at 352. In view of this unduly narrow perspective it will be well to review the full spectrum of what Sunday means to the generality of the populace, as conceived in *Two Guys* to have been properly within the legislative contemplation in proscribing Sunday activity.

* * * The fact is that Sunday has acquired a special character differentiating it from the other days of the week and this without reference to religious connotation. Today Sunday is many things to many people. It is a day upon which the vast majority of citizens seek respite from the pressures and demands of ordinary routines. To some, it is a day for religious devotion alone. To others, whether

or not members of faiths commanding religious observance, it is a secular holiday, a day for play, hobbies, recreation or relaxation. To still others, it is a combination of all of these. It is a day for family and friendly reunions. Most people want Sunday for themselves to do as they feel they should, each to prepare himself in his own way to meet the demands of Monday morning.

Thus the public health and welfare are implicated when the hustle and bustle mount and intrude unreasonably upon opportunities for rest, leisure and diversion. The inroad may be in terms of direct interference as, for example, when commercial activities add to highway traffic to the discomfort of the Sunday driver or otherwise impinge upon a scene conducive to rest, diversion and recreation. The inroad may be indirect but equally real as when those who want to be free on Sunday find the economic aims of their employer compel them to work to hold their jobs, or when the economic impact upon employers requires them and their staffs to remain at the grindstone. 32 N. J. at 215–216.

Thus, applying the teaching of the equal protection cases cited above, if there is any reasonably conceivable basis upon which the Legislature could have deemed the Sunday sale of the five categories of articles to have interfered to some degree with the public enjoyment of Sunday in one or more of the aspects of rest and relaxation described in the foregoing excerpt from *Two Guys,* the Court must sustain the law. It is the legislative function, not that of the court, to weigh the anticipated benefits to the public against the detriments to would-be Sunday shoppers and merchants. Only if the anticipated benefits could be affirmatively established to be so illusory as to stamp the legislative classification as arbitrary or capricious would a court be justified in striking it as lacking in equal protection or as denying due process.

Before subjecting the invalidating rationale of the trial court to analysis, certain facts which are obvious in relation to possible legislative motivations and implicit justificatory considerations for the classification of economic activities proscribed on Sunday by the current statute should be noted. Practically all manufacturing, processing and wholesaling activity, as well as the bulk of the service industries, ceases on Sunday. While this may have originated in religious belief,

in modern times it has become largely a custom rooted in social and economic considerations.[2] Such closure extends to small as well as large businesses. There was therefore no pressing need to include in the Sunday Closing Law when enacted in 1959 prohibitions extending to such activities. As of 1959 and since, as we may assume the Legislature was aware, there was also large-scale voluntary closure of retail sales activity on Sunday. Notable exceptions thereto are some food establishments, restaurants, gasoline stations and drug stores. A rational basis for exempting these from Sunday closure on grounds of necessity or relationship to Sunday as a day of relaxation is obvious. Considerations of relevance to convenience for Sunday recreation seekers would also rationally justify excluding from the ban the wide variety of goods and articles sold for use in recreational activities. See *McGowan v. Maryland, supra,* 366 *U. S.* at 427–428, 81 *S. Ct.* 1101.

As to the limitation in the 1959 statute of furniture, furnishings, building materials, clothing and appliances as the only types of items forbidden to be sold on Sunday, we note that *Two Guys* recognized that there was a major eruption of retail activity on the highways during the 1950's, 32 *N. J.* at 209, see also *McGowan v. Maryland, supra,* 366 *U. S.* at 541, 81 *S. Ct.* 1101 (concurring opinion of Frankfurter, J.) as to similar phenomena in Pennsylvania, and it is clear to us that the Legislature could reasonably have felt that the kinds of merchandise mentioned were typically those whose Sunday sale was beginning to constitute a substantial threat to the Sunday rest and relaxation of the population at large. The Legislature was, of course, constitutionally free to address and deal with this particular impediment to Sunday rest and relaxation without extending a prohibition

---

[2] The trial court opinion notes that industry today broadly observes a Saturday-Sunday holiday, partly the result of the labor union movement. 148 *N. J. Super.* at 358, n. 8.

to every other area of possible need. *Two Guys, 32 N. J.* at 218–219.

The trial court in the instant case did not undertake to establish that the classification in the Sunday Closing Law, in the sense of contrast between articles permitted and articles forbidden to be sold, was devoid of any rational relationship to its validated purposes on any conceivable basis the Legislature might have entertained therefor. It did not even address that proposition. Rather, the court proceeded on the bald assumption that if there were any such rational basis for the classification the court could invalidate the law if its purported salutary effect was outweighed by the resulting inconvenience to Sunday shoppers. Thus the court said:

> [P]laintiff must show either that the classification is not at all related to the aim of affording the general public with relief from the stress of everyday pursuits or, if it bears some relation to that aim, its impact is not sufficiently significant in that regard to outweigh the public's inconvenience necessarily resultant from the ban imposed by the challenged legislation.
>
> 148 *N. J. Super.* at 351.[3]

The foregoing statement was erroneous as a matter of law. If the classification bore "some relation" to the legislative objective of relief from interference with Sunday rest and relaxation, it was immune from invalidation through judicial admeasurement of a supposed preponderant inconvenience to would-be Sunday shoppers. As indicated hereinabove, the weighing of relative benefits and detriments in

---

[3] A serious question is presented as to the standing of plaintiffs to challenge the classification of the statute as deleterious to Sunday shoppers, the plaintiffs representing only the class of sellers. The gravamen of the trial court holding is injury to shoppers, not merchants. See *United States v. Raines*, 362 *U. S.* 17, 21, 80 *S. Ct.* 519, 4 *L. Ed.* 2d 524 (1960); *State v. Norflett*, 67 *N. J.* 268, 276, n. 7 (1975).

We pass the question as we are satisfied the Sunday Closing Law is valid from the standpoint of shoppers as well as merchants and believe it in the public interest to lay the question to rest.

police power regulation is for the Legislature exclusively. In its *ratio decidendi,* however, the court appears to have partly rested on the factual conclusion that the proof adduced by plaintiffs' expert witnesses sufficed to demonstrate that the law failed in fact to serve the legislative object and purpose at all ("the classification scheme * * * has been demonstrated to have failed to legitimately advance the welfare of the general public * * *"; 148 *N. J. Super.* at 351). We find ourselves in distinct disagreement.

The plaintiffs' witnesses were Dr. Yehudi Cohen, an anthropologist, Warren Travers, a traffic engineer and consultant, and Dean Boorman, a land-use planner.

As to Dr. Cohen, his testimony is virtually worthless for bias because of his avowed hostility to the policy of Sunday closing legislation, whatever the classification. The sum and substance of his testimony is that Sunday shopping is a recreational activity for women and families prevention of which to any degree is socially undesirable. Giving this witness' evidence full face value, it in nowise tends to establish that the prohibition of Sunday sales of the prohibited categories of goods is not effective to reduce interference with the ambiance of Sunday as a day of rest and relaxation in any of the aspects recognized as fit for legitimate legislative concern in *Two Guys.* See 32 *N. J.* at 216, 228–229. The subjective value judgments of this witness as to the subject matter represent considerations totally for the appraisal of the Legislature, not the courts.

Travers perceived the issue to be one as to whether Sunday openings for sale of the proscribed items would increase the volume of traffic on certain main highways or routes that are used by travelers in pursuit of recreation. On the basis of a highly selective set of statistics, he found they would not. Passing for the moment the question of the reliability of the studies underlying the stated conclusion, the proposition falls far short of negating the numerous other rationally perceivable bases for the legislative determination. Travel for recreation is only one, and relatively minor at that, Sunday

pursuit of the populace. There are many others. As pointed out by *Two Guys* in language quoted above, the Legislature may prohibit Sunday commercial activity when it causes "hustle and bustle [to] mount and intrude unreasonably upon opportunities for rest, leisure and diversion." 32 *N. J.* at 216. The inroad may consist of the increase of commercial traffic to the discomfort not only of the Sunday driver bent on recreation but of those who may be visiting or travelling for any of the other relaxing purposes for which one may be driving on the streets and highways on Sunday. The journeys and activities of Sunday shoppers and merchants may also "otherwise impinge upon a scene conducive to rest, diversion and recreation." *Id.* at 216. Thus, people strolling, cycling, jogging, or sitting in their yards or on their porches on Sunday in or near areas where stores or shopping centers are located may find the "scene" less conducive to their enjoyment of the day by the sights and sounds — the general hustle-bustle — attendant upon traffic and other accompaniments of retail selling. Travers' statistics and conclusions do not bear upon the legitimate legislative concern with any of these other reasonably conceivable effects of continued unrestricted sale of the proscribed articles.

The fact that there is inevitably a given amount of interference with Sunday rest and relaxation attendant upon permitted Sunday commercial activity (*e. g.*, sales of food, drugs, etc.), travel from "open" to "closed" counties and from out of state to "closed" counties, and the like, as pointed out by Travers, cannot derogate from the inescapable logic that for every would-be Sunday venturer on the highways whose only purpose is to purchase or shop for one or more of the proscribed items the effect of the law is highly likely to eliminate that trip. Nothing in Travers' testimony could establish the irrationality of a legislative supposition that enough of such trips are obviated by the Sunday Closing Law as to substantially further the assumed legislative objective in one or more of the respects noted above. In this regard it is significant that plaintiffs' proofs established that in "open"

counties its stores' Sunday sales were generally higher than on any other day of the week.

Even in respect to the purported Travers' theme — little or no impact on recreational driving from a hypothetical Sunday opening — the supporting data are inconclusive because limited to state highways (and only a minimal sampling of those). Ignored, consequently, is the potential effect, from lifting the prohibition on sale of the proscribed types of goods, of increased Sunday motoring on local streets or roads in or near urban or suburban business districts and neighborhoods.

The testimony of the witness Boorman was imbued with the same narrow focus as that of Travers: *i. e.,* "to evaluate whether the allowance of the full opening of stores in the counties in New Jersey where the sale of certain items is prohibited on Sunday would add traffic to the highways to an extent which would interfere with recreational travel." It is therefore subject to the same conclusions of inadequacy in constitutional terms as Travers' testimony. Moreover, Boorman assumed an increase in such traffic if the law were repealed, and this in itself tends to support the legislative judgment. His conclusions that such an increase would not be too great or unduly burdensome to those seeking to enjoy Sunday are, again, obviously matters for legislative not judicial consideration.

The testimony of Travers and Boorman, as well as the opinion of the trial court, also disregards a reasonably conceivable legislative concern with the potentiality that widespread Sunday opening of stores like the plaintiffs' selling the proscribed items could well, by competitive pressure, force the Sunday opening of the considerable number of other stores selling the same kinds of articles which now elect to stay closed on Sunday. This could "snowball" into very substantial incursions upon Sunday rest and relaxation both on highways and in central city and suburban business areas and their environs. See *Gundaker Central Motors v. Gassert,* 23 *N. J.* 71, 82 (1956) appeal dism. 354 *U. S.* 933, 77 *S. Ct.*

1397, 1 *L. Ed.* 2d 1533 (1957) ; *McGowan v. Maryland, supra* (366 *U. S.* at 541, 81 *S. Ct.* 1101, concurring opinion of Frankfurter, J.).

Finally, plaintiffs overlook the potential legislative concern with giving employees of stores selling the five categories of goods access to the common Sunday rest and relaxation enjoyed by the community at large. See *McGowan v. Maryland, supra,* 366 *U. S.* at 538, 81 *S. Ct.* 1101 (concurring opinion of Frankfurter, J.). This consideration is distinguishable from that of concern for relief from uninterrupted labor for more than six days, held in *Two Guys* to be arbitrary if limited to the five categories of goods. 32 *N. J.* at 218–219. If the Legislature felt that because of general voluntary closing on Sunday (except for necessary occupations) stores selling the five categories of goods were typically those seeking to be open on Sunday, then it could reasonably have been motivated, along with the other considerations already discussed herein, to make the common Sunday rest and relaxation benefits enjoyed by the public at large available also to employees of such stores.

The parties have cited decisions in other states variously invalidating and sustaining Sunday closing statutory classifications. These largely depend on the particular exemption schemes and background facts implicated. They are of limited influence in this case as the basic approach of this Court to the validity of our own statute was fixed in *Two Guys,* and we prefer to adhere to the guidelines set forth therein, as we have done in this determination.

Intervenor, Menswear Retailers of New Jersey, Inc., has invited us to consider overruling *Two Guys* to the extent that that decision held the Sunday Closing Law to have repealed by implication the prior comprehensive Sunday prohibitory legislation as set forth in the 1951 revision. Reliance is had upon the Supreme Court decisions in *Two Guys from Harrison-Allentown v. McGinley, supra,* and *McGowan v. Maryland, supra.* Although those decisions upheld the validity of later and narrower Sunday prohibitory statutes against

the background of broader, more comprehensive earlier closing laws, in neither case was the question of implied repeal of the earlier by the later statute an issue. Indeed, the Court in the *McGinley* case noted that the stated issue was unsettled as a matter of Pennsylvania law. 366 *U. S.* at 588, 589, 81 *S. Ct.* 1135.

We find no reason to reconsider the holding of *Two Guys* in the respect noted.

For the reasons hereinabove set forth, we conclude plaintiffs have not established the invalidity of the Sunday Closing Law on equal protection or any other grounds.[4]

## II

Plaintiffs have cross-appealed[5] on the grounds: (a) the categorization of goods saleable and non-saleable under the statute is unconstitutionally vague and ambiguous; and (b) the pending prosecutions of plaintiffs sought to be enjoined by the complaint herein should be vitiated because of selective enforcement and because the statute is invalid as incapable of uniform enforcement. The trial court found these contentions to lack merit. 148 *N. J. Super.* at 361–362.

We agree with the trial court that our decision in *State v. Monteleone,* 36 *N. J.* 93, 99 (1961), is dispositive of the first ground of the cross-appeal. The first phase of the second ground of appeal is rejected for the reasons set forth in the trial court's opinion. 148 *N. J. Super.* at 361–362. See also *Abrahams v. Civ. Serv. Comm.,* 65 *N. J.* 61, 74–75 (1974). As to the second phase of that ground, we find it not supportable on the record of this case, taken in entirety,

---

[4]It bears reminder that by referendum the voters of any county in which the law is operative can render it nugatory therein. *N. J. S. A.* 2A:171-5.16. Two counties have taken such action since 1959.

[5]It would have been more appropriate for plaintiffs to argue these as alternative grounds to sustain the trial court's judgment rather than cross appeal as they are not aggrieved by the judgment.

and in the light of the heavy presumption of validity of a legislative enactment of substantial duration. *Schaad v. Ocean Grove Camp Meeting Association,* 72 *N. J.* 237, 265 (1977).

The judgment is reversed and the cause remanded to the Law Division with directions to dismiss the complaint.

SULLIVAN, J. (concurring). As the majority opinion notes, the constitutionality of Sunday closing legislation has been consistently upheld. My problem is with the classifications of goods which may not be sold at retail in those counties of the State which have adopted the provisions of the statute by referendum vote.

Because of the generality of the classifications made, I doubt whether, realistically, the law is capable of enforcement against those retail businesses which are more interested in circumventing the statute than in attempting to comply with its provisions. Despite these doubts, I would uphold the statute as written. Not only does it represent a declaration of legislative policy, but, as noted, becomes operative in a county only when adopted by the people by referendum vote. In the ten counties in which the statute is presently in effect, there is always the right to have the question of the applicability of the statute resubmitted to the electorate at the next general election.

If retail businesses are confronted with problems in the interpretation and application of the statutory classifications, this is a matter for legislative attention. The judiciary should not attempt to impose its own concept of what is socially desirable. Subject to the foregoing, I join in the majority opinion. Justice CLIFFORD joins in this opinion.

PASHMAN, J. dissenting. I agree with the ruling below that the misnomered "Sunday Closing Law," *L.* 1959, *c.* 119, *N. J. S. A.* 2A:171–5.8 *et seq.,* is unconstitutionally arbitrary in its classification of the goods whose sale is proscribed on that "special" day of the week. Thus, I respectfully

dissent from this Court's reversal of that holding. Irrespective of whether the statutory classification satisfies any of the current Equal Protection tests, it fails abysmally when subjected to scrutiny under a standard too frequently ignored by judges attracted by the intellectual allure of legal niceties incomprehensible to the public — the test of common sense. When examined from that perspective, the idyllic scenario wistfully conjured by the majority to provide the "rational basis" justifying the statutory classification is patently at odds with the realities of the commercial and consumer worlds of 1978. Assuming any "Sunday Closing" legislation with the purpose ascribed to Chapter 119 can be valid, the unreasonableness of this particular statutory manifestation should earn it the condemnation of this Court.

I

Since the facial validity of Chapter 119 was upheld by this Court in *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199 (1960), the trial court was solely concerned with its constitutionality as applied. *Furman* held that the Legislature's selection of Sunday as a day for imposing restrictions on commercial activity was a permissible exercise of the police power aimed at the protection of the welfare of the community against "unreasonable interference with the opportunity of the public to find relief from every day tensions." 32 *N. J.* at 216, 227–228. The Court found that the Legislature could reasonably conclude that the "public health and welfare are implicated when the hustle and bustle mount and intrude unreasonably upon opportunities for rest, leisure and diversion," and impaired by the resulting "interference with the efforts of the vast majority of the citizens to find surcease from the pressures of the work week on the day generally selected by them for that purpose." *Id.* at 216, 228. Although the issue is not squarely presented in this appeal, I entertain substantial doubts that legislation intended to serve such a purpose is within the police power

and would reexamine the correctness of Furman's unquestioning acceptance of its legitimacy.

Ignoring for the moment the economic interests of retailers such as plaintiff who wish to sell the proscribed goods on Sunday, I believe that the statute is constitutionally defective for a totally different reason. It subjects would-be Sunday shoppers to unnecessary governmental restrictions on their harmless personal activities. This Court has recently taken great strides toward the recognition of the primacy of the rights of individual autonomy and self-regulation over the paternalism of public policy. Where the state interest in regulating the personal decisions and conduct of the citizenry is less than compelling, we have struck down overzealous regulatory measures which unduly hinder the prerogatives of the individual. *Merenoff v. Merenoff*, 76 *N. J.* 535 (1978); *State v. Saunders*, 75 *N. J.* 200 (1977). In *Merenoff*, an unanimous Court held that the preservation of marital harmony was a goal whose accomplishment was best entrusted to the discretion of the marital partners. The presumed efficacy of the public policy prohibiting tort actions between spouses in advancing that wholesome goal was found insufficient to warrant its continued existence. In *Saunders*, we held that the State failed to articulate a sufficient interest to justify its regulation of the sexual activities of unmarried adults capable of making responsible decisions on that subject for themselves. In both instances, society was telling its individual members that the apparent penalty it was imposing was "for their own good." The situation is no different here.

The State is effectively permitting those counties which have opted for this partial prohibition of Sunday sales to tell would-be consumers that they may not purchase the tabooed goods on Sunday, no matter how much they might wish to do so. The reason for this prohibition is to prevent consumers from depriving themselves and others of the opportunity to engage in the relaxation and recreation which they need. In other words, persons who, for whatever reason,

might choose to shop on Sunday for the prohibited items are prevented from doing so for their own good. The apparent assumption behind this prohibition is that such persons will, by reason of their inability to shop, be effectively forced to devote their Sundays to the recreational activity the Legislature thinks is more beneficial for them. By serving as a deterrent to Sunday shopping, the statute presumably serves as an incentive to Sunday relaxation.

The statute of course has no effect whatsoever on that segment of the community which does not wish to shop on Sunday. These persons will relax voluntarily without any legislative coaxing. However, in modern America many persons consider shopping to be a relaxing, recreational activity. The fact that so many people do shop on Sundays seriously impugns the legitimacy of Chapter 119's alleged purpose. Yet the State tells recreational shoppers that in order to make them relax on Sundays they may not purchase, among other things, clothes or furniture. Even those for whom shopping is drudgery might wish to be able to get it over with, if they so chose, on some Sunday when inclement weather precludes other activities. Moreover, for many persons shopping on Sunday is often a matter of necessity. To the person who works the other six days of the week, the State says you must travel to an "open" county or out of the state if you wish to buy clothes or furniture.

Concededly, there is no recognized individual "right" to shop, and an individual's interest in being free to purchase the proscribed goods on a particular day of the week is far from fundamental. Nevertheless, the State's legitimate interest in restricting the consumers' right to do so on Sunday is even less weighty. The ultimate touchstone in assessing the propriety of governmental regulation under the police power is the public need. In *Katobimar Realty Co. v. Webster*, 20 *N. J.* 114 (1955), this Court observed that

The police function cannot be expressed in terms of a definitive formula that will automatically resolve every case, for its quality

and scope are commensurate with the public exigencies arising from everchanging social and economic conditions. * * * The police power is the public right to reasonable regulation for the common good and welfare.

[Id. at 122–23]

We further noted that "the exertion of the [police power] authority shall not go beyond the public need" and that "the authority coincides with the essential public need." *Id.* In my view, there is no legitimate public need to force people to relax on Sunday and to do so by disabling them from pursuing one particular type of activity. Moreover, government has no valid interest in determining what kinds of recreation should be available to individuals so long as their choice of activity is not affirmatively harmful to others.

In *Furman,* Chief Justice Weintraub, in discussing the ban of the statutory predecessor to Chapter 119 on all forms of recreation on Sunday, stated

One is hard put to find a fair connection between such restraints and any known threat to the public health, safety, morals and welfare. * * * [I]t is difficult to find a basis under the police power for such extraordinary restraint upon individual freedom.

[32 *N. J.* at 217]

To my mind, this succinct observation applies with equal force to Chapter 119 and any other legislative attempt to enforce one group's concept of socially beneficial Sunday behavior in the name of public welfare by proscribing the voluntary conduct of individuals who choose to pursue their happiness in some other manner. Few would seriously contend that the Legislature could constitutionally ban the sale of food on a certain day of the week in order to promote the socially desirable goal of eliminating the individual health problems caused by being overweight. Such a statute invades the zone of personal autonomy. At some point society's interest in seeing that a person does what is "best" for himself must yield to individual responsibility and free choice in making that determination. Just as the decision whether or not to

eat certain foods despite their potential adverse effect on one's health is solely a matter for personal choice, so should be the decision whether to shop or to relax on Sunday.

I do not question the validity of the legislative perception that a need for "rest, leisure and diversion" exists. My concern is only whether that goal is one that the Legislature may seek to advance in the name of public welfare by invocation of the police power to limit the activities of those who choose not to relax on Sunday and want to shop or of those for whom shopping is itself recreational and relaxing. I think not. Our society might perhaps be less fractious and interpersonal relations much warmer if all persons devoted more time to unwinding from the pressures of the daily grind. However, the police power does not exist in order to sanction all governmental regulation which arguably might bring us closer to a utopian society. Nor does it exist to afford government a privilege to exercise quasi-Orwellian control over its citizens. The proper role of the police power is to protect the public safety, health and welfare. It is not a license to organize individual lives by governmental fiat.

One can theorize innumerable improvements in society which all might hail as salutary developments. But not every potentially beneficial change in human behavior can be legislated by governmental regulation under the police power and thus imposed on those who would do otherwise. Such an encroachment on individual freedom must be justified by a meaningful and realistic nexus between the goal sought to be achieved and the public welfare. The goal of Sunday "rest and relaxation" has only the most tenuous and speculative connection thereto. The marginal interference with that goal caused by Sunday shopping hardly poses a realistic threat to the welfare of society. The statutory purpose is therefore insufficient to justify Chapter 119's substantial infringement on the freedom of those who might wish to shop on that day.

## II

Turning to the validity of Chapter 119 as applied, I agree with the trial court that the statute's classification of the goods which may not be sold on Sunday lacks any rational basis and fails to advance the rest and relaxation objective relied upon by the *Furman* Court. In that decision, the Chief Justice wrote:

> * * * [w]e must assume * * * that the Legislature found the items dealt with by chapter 119 are ones which, above and beyond all others, are provocative of the problem; that the elimination of their sale on Sunday will remove the undue interference with the opportunity of the citizens for relief from the stress of everyday pursuits.
> [32 *N. J.* at 228–229]

Accordingly, the trial judge quite properly sought to assess the extent to which the unrestricted Sunday sale of the proscribed items would actually interfere with the opportunity of those who wished to do so to engage in relaxing or recreational pursuits. In other words, she sought to test the sustaining rationale found in *Furman* as applied to the realities of retailing today. Her conclusion that the potentially negative consequences of unlimited Sunday shopping were essentially chimerical was correct in light of both the evidence before her and common sense.

Moreover, I disagree with the majority's subjection of Chapter 119 to the less than rigorous judicial scrutiny usually reserved for governmental regulation of economic activity. Its use of the rather mechanistic analysis of the "rational basis" test[1] is peculiarly inappropriate when the Court is

---

[1] In *Robinson v. Cahill,* 62 *N. J.* 473 (1973) *cert.* den. 414 *U. S.* 976, 94 *S. Ct.* 292, 38 *L. Ed.* 2d 219 (1973), Chief Justice Weintraub had occasion to condemn talismanic judicial alherence to the so-called "two tiered" analysis employed by the United States Supreme Court under which only those governmental actions impinging upon "fundamental" rights are subjected to strict judicial scrutiny:

Mechanical approaches to the delicate problem of judicial intervention under either the equal protection or due process clauses may

faced with consideration of a statute whose primary impact is a substantial infringement upon the freedom of action of many citizens of this State. The statute severely limits personal autonomy and free choice. Since Chapter 119 goes well beyond mere economic regulation, the validity of its classification must be measured under the test we announced in *Taxpayers Association of Weymouth Tp. v. Weymouth Tp.,* 71 *N. J.* 249 (1976) : whether the challenged classification bears a "real and substantial relationship" to the governmental interest it is alleged to serve such as would justify its denial of an important personal right. *Id.,* at 286–287. In light of the failure of Chapter 119 to survive the less critical scrutiny of the rational basis test, its inability to meet the more exacting standard of review mandated by *Weymouth* is obvious. Only the most creative imagination could find a *substantial furtherance* of the relaxation objective of Chapter 119 by this limited restriction on Sunday shopping.

The folly of the majority's approach to this question is its foundational assumption that persons who would shop for the proscribed items and persons who would shop for the unregulated goods comprise two distinct and non-overlapping categories. Its conclusion that eliminating the ability of the former class to shop will reduce "hustle and bustle" to the small degree required to sustain the statute under the generous test the majority employs follows *a fortiori.* The crux of this holding is the "inescapable logic" of its perception that

only divert a court from the meritorious issue or delay consideration of it. Ultimately, a court must weigh the nature of the restraint or the denial against the apparent public justification, and decide whether the State action is arbitrary. In that process, if the circumstances sensibly so require, the court may call upon the State to demonstrate the existence of a sufficient public need for the restraint or the denial.

[62 *N. J.* at 491–492 (citations omitted)]
The individual right implicated in the instant case, while perhaps not fundamental, is certainly one whose denial should receive more than the cursory review given today by the Court.

* * * for every would-be Sunday venturer on the highways whose only purpose is to purchase or shop for one or more of the proscribed items the effect of the law is highly likely to eliminate that trip.

[See *ante* at 360]

Had it been made, that trip presumably would have "interfered to some degree with the public enjoyment of Sunday." See *ante* at 356. The allegedly self-evident nature of the majority's observation leads it to find no irrationality in the "legislative supposition that *enough* such trips are obviated by the Sunday Closing Law as to *substantially* further the assumed legislative objective * * *." See *ante* at 360 (emphasis added). The illogic of the majority's factual premise renders the validity of its legal conclusion at best questionable.

The majority conveniently omits any discussion of the fact that Chapter 119 operates as a *partial* Sunday closing law — retailers who sell goods other than those whose Sunday sale is prohibited are free to open their stores on Sunday and to offer the unregulated goods for sale. In plaintiff's case, the only significance of Sunday is that a few departments must be roped off and closed. Non-prohibited wares are sold in the same manner as is done on the other days of the week. Vornado's employee staffing on Sunday is nearly identical to that prevailing when the store is totally open.

Consumers shop in stores offering a broad spectrum of goods for the convenience of one-stop shopping. Normal shopping lists include both proscribed and unregulated items in order to maximize the utility of one shopping venture. As plaintiff's representative stated before us at oral argument, the consumer traffic is there on Sunday just as on the other days of the week — the only difference is that the shoppers are unable to purchase the proscribed items on Sunday. To that extent, their shopping trip is not as productive as it could have been, but the trip is made nevertheless. That plaintiff and other similar retailers might enjoy a greater volume of business on Sunday in the absence of Chapter 119 would not necessarily be attributable to a greater number of shoppers.

The vast majority of shopping trips contributing to the undesirable hustle and bustle on Sundays would occur with or without the limited prohibition of Chapter 119. The number of trips which would have the purchase of proscribed items as their sole purpose would be at most an infinitesimal addition to the number of trips already made for the purchase of unregulated goods. If the ban of Chapter 119 were eliminated, the utility of trips by those who will also buy unregulated goods would be increased. In such circumstances, it strains reason to say that the rest and relaxation objection of the statute is furthered even slightly, much less substantially, by its classification of the goods which may not be sold on Sunday. In the words of the majority's own formulation, the "anticipated benefits" to the public enjoyment of Sunday as a day of relaxation from Chapter 119 are indeed "so illusory as to stamp the legislative classification as arbitrary or capricious * * *." See *ante* at 356.

*Furman* held that it would have been irrational for the Legislature to perceive uninterrupted labor as an evil and have its elimination as the object of Chapter 119 and yet allow all but the proscribed goods to be sold on Sunday. 32 *N. J.* at 219, 222. In my view it is equally irrational for the Legislature to have perceived Sunday relaxation as a societal goal and have elimination of any interference therewith as the statutory object and then ban only an insignificant portion of total Sunday activities — the retail sale of five types of goods. Assuming the legitimacy of the goal Chapter 119 seeks to accomplish, its ban on Sunday activity would have to be significantly more far-reaching than it is at present before the statute could fairly be said to reasonably advance the end of maximizing the public's opportunities to enjoy blissful Sundays. While the power of the Legislature to take one step at a time in an attempt to strike at the perceived evil where it is greatest is undeniable, it is incumbent upon this Court to ensure that the step taken is an effective one — not an arbitrary singling-out of a particular activity for restrictive regulation of imaginary efficacy. All members of

the public, both those who desire unrestricted shopping and those who seek relaxation on Sunday, will be "hard put" to find an element of common sense in the majority's sanctioning of this legislative charade.

One need not be clairvoyant to realize that the Sunday hustle and bustle attributable to the pursuit of recreational activities far exceeds that attributable to Sunday shopping. Furthermore, the hustle and bustle incident to shopping for the goods proscribed by Chapter 119 is small in comparison to that attributable to permitted Sunday shopping activities and pales into insignificance in comparison to that attributable to recreational endeavors. I doubt very much that a Sunday driver stuck on a jammed highway for hours in Monmouth County on a summer Sunday evening finds much solace in the fact that none of those sharing his predicament was out shopping for the proscribed goods. Nor is it likely that a similarly-situated driver in the "open" shore counties blames his plight on the fact that Sunday shoppers for the proscribed goods have swollen the highways.

The legitimacy of Chapter 119 is further undermined by what may charitably be termed its uneven administration. The combination of its vague proscriptions and avowed recreation-promoting purpose has resulted in the anomaly that one may purchase sneakers on Sunday but not shoes. The absurdity of this state of affairs inevitably tends to breed contempt for our system of law and makes it difficult to realistically say that the relaxation object of the statute is advanced in any manner that can fairly be termed rational.

Finally, I would point out that today's decision establishes only that this plaintiff has failed on this record to demonstrate Chapter 119's unconstitutionality as applied. The Court's stalwart defense of the statute should not deter a future attempt to meet the admittedly onerous but nevertheless not insurmountable burden of proof the majority has chosen to impose on those who would challenge that legislative excursion into benevolent paternalism.

HANDLER, J., dissenting. I dissent respectfully from the majority of our Court because I am convinced that the Sunday Closing Law, *N. J. S. A.* 2A:171–5.8 *et seq.,* contravenes the equal protection clause of our State Constitution, *N. J. Const.* (1947), Art. I, par. 1. This law, in its classification of goods and operation as a regulatory scheme to discourage retail commercial activity on Sunday, does not rationally and reasonably promote the legislative purpose, as found in *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199 (1960). That purpose was said to be to foster an atmosphere of rest and recreation so that the "vast majority of the citizens" might "find surcease from the pressures of the work week on the day generally selected by them for that purpose." *Id.* at 228. The record developed in this case confirms ordinary experience. It shows that the ban of retail selling of particular goods — clothing, lumber, furniture, furnishings and appliances — in only ten of the State's twenty-one counties has had an uneven, inconstant and miniscule effect in fostering a peaceful and recreational milieu. I do not believe, therefore, that the statute can constitutionally endure in its present form.

*Two Guys from Harrison, Inc. v. Furman, supra,* held that the Sunday closing statutory scheme, *N. J. S. A.* 2A:171–5.8 *et seq.,* proscribing the sale on Sundays of clothing or wearing apparel, building and lumber supply materials, furniture, home, business or office furnishings and household, business or office appliances in counties which adopt its provisions by referendum, did not merely supplement but rather superceded and replaced the 1951 revision of prior Sunday closing legislation, *N. J. S. A.* 2A:171–1 *et seq.* The Court identified two possible legitimate police power objectives of the extant Sunday closing legislation: (1) relief from uninterrupted labor for seven days a week, and (2) promoting an atmosphere conducive to rest, recreation and the relief from everyday tensions. The Court rejected the first possibility, concluding that the classification of goods was not rationally and reasonably related to pro-

viding uniformly for a single day of rest. It determined that there was no "reasonable basis for the differentiation in chapter 119 [*N. J. S. A.* 2A:171-5.8 *et seq.*] of the work area embraced in the sale of the items it proscribes from the work area it leaves untouched." *Two Guys from Harrison, Inc. v. Furman, supra,* 32 *N. J.* at 219. The Court sustained the facial validity of the law as rationally related to the second possible objective of fostering an atmosphere for peace and change from everyday routine. It found this purpose to be "unanchored to the policy" of the prior law (*id.* at 223) and held that the evil inferred from the law and addressed by it was the "unreasonable interference with the efforts of the vast majority of the citizens to find surcease from the pressures of the work week on the day generally selected by them for that purpose." *Id.* at 228.

In upholding *N. J. S. A.* 2A:171-5.8 *et seq.,* the Court rebuffed an attack made on constitutional grounds that on its face the law contravened the principle of separation of Church and State, as embodied in the Federal and State Constitutions, and the equal protection clauses of both constitutions. It thus reversed a judgment on the pleadings in favor of the opponents of the legislation; it also reversed a summary judgment in favor of plaintiffs to enable them to proceed to trial on the issue that the statutory classification was arbitrary and denies equal protection. *Two Guys from Harrison, Inc. v. Furman, supra,* 32 *N. J.* at 229-230. Plaintiffs here, as successors and privy to their party-predecessors in the earlier litigation, have proceeded to trial and, in my opinion, have demonstrated and proved that the statutory attempt to enhance the efforts of the vast majority of our citizens to find respite from daily pressures is a failure.

It is fundamental that all police power legislation must conform to the State constitutional requirement of equal protection of the laws. This basic guarantee, secured by *N. J. Const.* (1947), Art. I, par. 1, is independent from that of the Federal Constitution. *Taxpayers Ass'n of Wey-*

mouth Twp. v. Weymouth Twp., 71 N. J. 249 (1976), cert. den. 430 U. S. 977, 97 S. Ct. 1672, 52 L. Ed. 2d 373 (1977); *Borough of Collingswood v. Ringgold,* 66 N. J. 350 (1975), appeal dismissed 426 U. S. 901, 96 S. Ct. 2220, 48 L. Ed. 2d 286 (1976); *Robinson v. Cahill,* 62 N. J. 473, cert. den. 414 U. S. 976, 94 S. Ct. 292, 38 L. Ed. 2d 219 (1973). Moreover, federal equal protection constitutional concerns are not necessary or even highly relevant to a disposition of this case. Concededly, our federal counterparts have been most indulgent of state Sunday closing legislation. *McGowan v. Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961); *Gallagher v. Crown Kosher Super Market of Massachusetts,* 366 U. S. 617, 81 S. Ct. 1122, 6 L. Ed. 2d 536 (1961); *Two Guys from Harrison-Allentown, Inc. v. McGinley,* 366 U. S. 582, 81 S. Ct. 1135, 6 L. Ed. 2d 551 (1961); *Braunfeld v. Brown,* 366 U. S. 599, 81 S. Ct. 1144, 6 L. Ed. 2d 563 (1961). Impliedly, there is recognition that such legislation is distinctly a matter of unique and special local concern.

In constitutional parlance, a statutory classification devised as a means for achieving a legislative end must be rational in that, at the very least, it must have a logical nexus with the police power objective which it is designed to promote. There is, of course, a presumption that the legislature envisaged a valid classification and, indeed, "[d]istinctions will be presumed to rest upon a rational basis if there be any conceivable state of facts which would afford reasonable support for them." *WHYY, Inc. v. Glassboro,* 50 N. J. 6, 13 (1967), rev'd on other grds. 393 U. S. 117, 89 S. Ct. 286, 21 L. Ed. 2d 242 (1968).

The majority of this Court is satisfied that there is a "conceivable" factual basis for the statutory distinction. It pointedly criticizes the trial court for adopting an erroneous standard for adjudging the constitutional validity of the statute. The trial court, according to the majority, failed "to establish that the classification in the Sunday Closing Law, in the sense of contrast bewteen articles permitted

and articles forbidden to be sold, was devoid of any rational relationship to its validated purposes on any conceivable basis the Legislature might have entertained therefor." *Ante* at 358. In effect, the majority says that the considerable body of evidence marshalled before the trial court (which, I submit, was thoroughly digested and assimilated by that court into well-founded factual determinations and legal conclusions) failed to dispel facts showing that "the classification bore 'some relation' to the legislative objective of relief from interference with Sunday rest and relaxation * * *." *Ante* at 358.

In applying the traditional test of constitutional validity of statutory classifications on equal protection grounds, the majority has not stressed that the rational basis, which is the predicate of validity, imports reasonableness as well as the absence of irrationality or illogicality. I must iterate that the avowed purpose of the Sunday Closing Law is to repress "unreasonable interference" with the opportunities of the "vast majority of the citizens" to seek respite on Sunday as a break from the "pressures of the work week", *Two Guys from Harrison, Inc. v. Furman, supra,* 32 *N. J.* at 228. The Court there necessarily had to consider the problem hypothetically. It assumed, therefore, "as the facts may reasonably be", that the particular items statutorily proscribed for sale on Sunday had been found by the Legislature to be the ones primarily "provocative of the problem" and that extirpating these goods from the commercial scene "will remove the undue interference with the opportunity of the [vast majority of] citizens for relief from the stress of everyday pursuits." *Id.* at 228–229.

That hypothesis is no longer tenable. As demonstrated convincingly by the record, which is confirmed by actual experience, the statutory scheme, with its classification of goods removed from sale, is inefficacious in achieving the purpose of the law to afford in a meaningful way Sunday respite for a substantial segment of the people. The trial court found on substantial and competent evidence "that the

ban on the sale of the five proscribed categories of goods both fails to advance the opportunity of the general public for recreation, diversion and leisure on Sunday, and, moreover, affirmatively impedes and interferes with that opportunity." *Vornado, Inc. v. Hyland,* 148 *N. J. Super.* 343, 352 (Law Div. 1977).

The majority's rejoinder on this crucial facet of the case is inadequate. Its treatment of the considerable evidence adduced below is somewhat captious; it is unresponsive to the point that the ban on the Sunday sales of the five categories of goods has not had a meaningful effect upon reducing "hustle and bustle" for a substantial portion of the population or that conversely removing that ban would not measurably change the Sunday scene for a large majority of people. It is no answer merely to assert that it was not shown that the prohibition of the Sunday sales of the designated class of goods was not "effective to reduce interference with the ambiance of Sunday as a day of rest and relaxation * * *," *ante* at 359; or that there is "inescapable logic that for every would-be Sunday venturer on the highways whose only purpose is to purchase or shop for one or more of the proscribed items the effect of the law is highly likely to eliminate that trip." *Ante* at 360. The evidence and findings of the trial court do show, contrary to the majority's view, "the irrationality of a legislative supposition that enough * * * [commercial] trips are obviated by the Sunday Closing Law as to substantially further the assumed legislative objective * * *." *Id.*

The legislative objective, to repeat, was to fashion for a "vast majority" of our citizens freedom from unreasonable and undue interference with their ability to find a break from the weekday routine. It is no longer permissible to conceive by stretching one's imagination, that there are facts to support rationally and reasonably this legislative hope. In light of a made record and ordinary experience, the constitutional issue cannot any longer be relegated to the

realm of supposition or hypothesis. The assumption of a reasonable and rational basis for this legislative approach for securing respite on Sundays has been dispelled and I would declare the law unconstitutional.

To be added to this primary thesis is another point. It ought not to be disregarded by our Court that the Sunday closing legislation does impact upon areas of personal privacy and freedom. It is true that laws of this character have been regarded as dealing with the "public health, safety, morals and welfare." *Two Guys from Harrison, Inc. v. Furman, supra,* 32 *N. J.* at 226. The statute, however, is two-dimensional in its purpose and application. Though directed toward the conventional governmental police power concerns of the "public health and welfare", *id.* at 216, the statute trenches upon areas ordinarily reserved for individual autonomy, *i. e.,* what people should be free to do with themselves on Sunday. In this vein, it matters not that the regulatory scheme is permissive as well as restrictive. As noted in *People v. Abrahams,* 40 *N. Y.* 2d 277, 284, 386 *N. Y. S.* 2d 661, 665, 353 *N. E.* 2d 574, 578 (Ct. App. 1976), "[t]o provide a day of rest it is necessary in modern society both to permit and to prohibit." As similarly and aptly put in *Two Guys from Harrison, Inc. v. Furman, supra,* 32 *N. J.* at 223, the statute "denounces but a part of the commercial scene and leaves untouched the right of the individual to follow recreational and other pursuits." The focus of the statute is Sunday activity. Twenty or so years ago, when the current law was enacted, the specialness of Sunday as a day reserved for the expression and fulfillment of individuality was keenly felt.

* * * Today Sunday is many things to many people. It is a day upon which the vast majority of citizens seek respite from the pressures and demands of ordinary routines. To some, it is a day for religious devotion alone. To others, whether or not members of faiths commanding religious observance, it is a secular holiday, a day for play, hobbies, recreation or relaxation. To still others, it is a combination of all of these. It is a day for family and friendly

reunions. Most people want Sunday for themselves to do as they feel they should, each to prepare himself in his own way to meet the demands of Monday morning.

[*Two Guys from Harrison, Inc. v. Furman, supra,* 32 *N. J.* at 216].

To this it may be added that Sunday is a day for shopping for a great many people and for those who are so minded this activity, depending upon individual circumstances, is necessitous, convenient, diversionary and recreational, at bottom reflecting the myriad personal wishes and subjective choices of individuals.

An exercise of the statutory police powers, which blankets so pervasively the privacy and autonomy of individuals, must be approached critically; its effectiveness as a social tool must be assessed with realism. Some of the reasons were sensed in a Sunday closing law case, *Skag-Way Dep't.* *Stores, Inc. v. Omaha,* 179 *Neb.* 707, 712, 140 *N. W.* 2d 28, 31–32 (Sup. Ct. 1966):

The difficulties of classification under modern conditions lead us more in the direction of individual persuasion and private conscience as the proper solution of the complex problem. And it might well be said that it is not the province of the state and its subdivisions in the exercise of its police power to invade the realm of private conscience except where it is incidental to the proper exercise of the police power.

Accord, *Rutledge v. Gaylord's Inc.,* 233 *Ga.* 694, 699–701, 213 *S. E.* 2d 626, 630–631 (Sup. Ct. 1975) (Gunter, J., concurring).

I would not, therefore, be content to rest this case solely upon the grudging constitutional test of whether one can divine any conceivable state of facts which rationally supports the legislative scheme. This is the kind of case where the rigid bounds of constitutional appraisal should be loosened just because it is so difficult to unravel the weave of interests caught by the legislation. I would invoke the precepts articulated by Chief Justice Weintraub in *Robinson v. Cahill, supra,* 62 *N. J.* at 491–492:

\* \* \* Mechanical approaches to the delicate problem of judicial intervention under either the equal protection or the due process clauses may only divert a court from the meritorious issue or delay consideration of it. Ultimately, a court must weigh the nature of the restraint or the denial against the apparent public justification, and decide whether the State action is arbitrary. In that process, if the circumstances sensibly so require, the court may call upon the State to demonstrate the existence of a sufficient public need for the restraint or the denial, See, for example, *Jones v. Falcey*, 48 *N. J.* 25, 39–40 (1966) ; *Independent, Electricians and Electrical Contractors' Association v. New Jersey Board of Examiners of Electrical Contractors*, 48 *N. J.* 413, 423–427 (1967) ; *Jackman v. Bodine*, 55 *N. J.* 371, 382–383 (1970).

I have little hesitancy in concluding that the nature of the restraint embraced in the Sunday closing law is not matched by an adequate governmental justification or counterpoised by a sufficient public need.

For these reasons, I dissent. Justice PASHMAN joins in this dissent.

SULLIVAN and CLIFFORD, JJ., concurring in the result.

*For reversal and remandment*—Chief Justice HUGHES, Justices SULLIVAN, CLIFFORD and SCHREIBER and Judge CONFORD—5.

*For affirmance*—Justices PASHMAN and HANDLER—2.